JOHN GINDRAT *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa June 15, 1891.*

138   103
143   583
138   103
151   529

1. CRIMINAL LAW—*evidence.* On the trial for the larceny of a diamond ring, the proof showed that defendants came into a jewelry store and examined some rings, but left without purchasing. Directly afterward a diamond ring was found missing from the tray, and a cheap imitation ring found in its place. The supposed thieves were followed and arrested, and the stolen ring found near where they were overtaken. In their possession, in a valise at their room, were found other similar imitation diamond rings, which the court admitted in evidence : *Held,* that the imitation diamond rings were properly admitted in evidence, as corroborative of the theory of their guilt, and as tending to show their ability or means of committing the crime.

2. SAME—*corpus delicti—identification of defendant—burden of proof.* If the prosecution, under an indictment for larceny, proves the *corpus delicti* as charged, and introduces evidence which, in the absence of contradiction or explanation, identifies the defendants as the perpetrators of the offense beyond a reasonable doubt, this is all that is required, and then it will devolve upon the defendants, either to prove that some one else committed the theft, or raise a reasonable doubt whether they or some one else committed it, or in some other way either show their innocence or raise a reasonable doubt of their guilt.

3. On the trial of parties for larceny, the burden of proving everything essential to a conviction is on the prosecution, and it is not sufficient for a conviction to show that the property was stolen, without identifying the defendants as the perpetrators of the crime.

4. SEARCHES AND SEIZURES—*constitutional limitation—evidence.* Sections 6 and 10, of article 2, of the State constitution, are limitations upon the powers of the State government, and have no reference to or bearing upon the unauthorized acts of individuals. Those constitutional restrictions do not prohibit all searches and seizures, but only such as are unreasonable, and the plain implication therefrom is, that a search warrant may issue if it is for a reasonable search and seizure, and is based upon probable cause supported by affidavit particularly describing the place to be searched and the persons or the things to be seized.

5. Where a party, without any search warrant, or other authority of law, enters the rooms of another, searches the same and seizes therein

evidences of the commission of crime, the act will be in violation of the civil rights of the latter, and a trespass, for which the former may be held liable in a civil action.

6. UNLAWFUL SEIZURE — *evidence procured by — whether admissible.* The fact that evidences of the commission of a crime are found by a mere private detective on an unauthorized search of a party's rooms, will not, of itself, render the evidence thus found incompetent against the party in whose possession the articles are found, if such evidence is otherwise competent. The court will not take notice in what manner such evidence has been obtained.

7. Though papers and other subjects of evidence have been illegally taken from the possession of the party against whom they were offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not form an issue to determine that question.

8. EVIDENCE—*source of, immaterial—when objected to.* Courts, in the administration of the criminal law, are not accustomed to be over-sensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent, and not subversive of some constitutional or legal right.

9. PRACTICE—*time to object—testimony illegally obtained.* If articles in the possession of one charged with crime are illegally seized, and introduced in evidence against him, unless he objects at the time to their admission the question of their competency will not arise.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. WING, STOUGH, CARTER & QUALEY, for the plaintiffs in error:

The admission of the jewelry in evidence was improper, because the jewelry was obtained in an unwarrantable manner, and evidence thus obtained could not be used against a defendant. Thus it was practically compelling a man to testify against himself. *Entick* v. *Carrington,* 19 Howell's State Trials, 1029; *Boyd* v. *United States,* 116 U. S. 616.

The testimony in no way tended to prove the issue,—that is, that the defendants stole the ring. *Devine* v. *People,* 100 Ill. 290; Greenleaf on Evidence, sec. 52; *Commonwealth* v. *Jackson,* 132 Mass. 16; *Jackson* v. *People,* 126 Ill. 148; *State* v. *Renton,* 15 N. H. 174; *Coleman* v. *People,* 55 N. Y. 81.

It was error to refuse the instruction as to the burden of proof. *South* v. *People,* 98 Ill. 261; *Ogletree* v. *State,* 28 Ala. 702; *Tweedy* v. *State,* 5 Iowa, 443; *Turner* v. *Commonwealth,* 86 Pa. St. 54.

Mr. GEORGE HUNT, Attorney General, for the People:

The first two articles of amendment to the constitution of the United States were not intended to limit the State governments, but to operate on the National government only. *Spies* v. *Illinois,* 123 U. S. 131.

The jewelry found was properly admitted in evidence. *Spies* v. *People,* 122 Ill. 1.

There was no error in refusing instructions.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In the Criminal Court of Cook county, the plaintiffs in error, John Gindrat and George Brown, were indicted and tried for the larceny of a diamond ring. Upon conviction each of them was sentenced to imprisonment in the penitentiary for a term of four years.

The evidence introduced by the prosecution tended to prove that at about four o'clock in the afternoon of May 14, 1890, the plaintiffs in error went into the place of business of Charles Gilman, a jeweler, at No. 124 North Clark street, in the city of Chicago, and asked to see some rings; that three trays containing rings were placed by Gilman on the show case before them, and that they feloniously abstracted from one of the trays a diamond ring of the value of $125, and substituted in its place an imitation of a diamond ring, worth about twenty-five cents, and then left the premises without making any purchase.

The court, at the trial, permitted the prosecution to show, over the objections of plaintiffs in error, by one DeSell, a police officer, that about ten o'clock in the night of said May 14, he, said DeSell, dressed in citizens clothes and acting as a

detective, and without authority from any one, and having no
search warrant, went to the rooms occupied by Brown and by
Gindrat and his wife, at the corner of Washington and May
streets, and searched everything in said rooms, and in a small
valise found two imitation diamond rings, four plain gilt rings
and four imitation diamond scarf-pins;· and also, over like
objections, permitted said cheap imitation jewelry to be given
in evidence to the jury. It is urged by plaintiffs in error that
this action of the court was violative of section 6 of article 2
of the constitution of the State of Illinois, which reads as fol-
lows : "The right of the people to be secure in their persons,
houses, papers and effects, against unreasonable searches and
seizures, shall not be violated; and no warrant shall issue
without probable cause, supported by affidavit, particularly
describing the place to be searched and the persons or things
to be seized," and also violative of the provision in section 10
of the same article of the constitution, that "no person shall
be compelled, in any criminal case, to give evidence against
himself."

In response to this claim, our attention is called to the de-
cision of this court in *Spies et al.* v. *The People*, 122 Ill. 1,
and the decision of the Supreme Court of the United States
in *Spies* v. *Illinois*, 123 U. S. 131. The question here at issue
did not arise upon the record before the courts in that case,
and consequently could not have been, and was not, decided.
This court there said, on page 233 of the official report of the
case : "The objection that the letter was obtained from the
defendants by an unlawful seizure is made for the first time
in this court. It was not made on the trial in the court below.
Such an objection as this, which is not suggested by the na-
ture of the offered evidence, but depends upon the proof of an
outside fact, should have been made on the trial. The defense
should have proved that the Most letter was one of the letters
illegally seized by the police, and should then have moved to
exclude it, or opposed its admission, on the ground that it was

obtained by such illegal seizure. This was not done, and therefore we can not consider the constitutional question supposed to be involved." And the Supreme Court of the United States, in the opinion delivered by Chief Justice WAITE, said: "Something was said in the argument about an alleged unreasonable search and siezure of the papers and property of some of the defendants, and their use in evidence on the trial of the case. Special reference is made in this connection to the letter of Most, about which Spies was cross-examined; but we have not been referred to any part of the record in which it appears that objection was made to the use of this evidence on that account. * * * The question whether the letter, if obtained in the manner alleged, would have been competent evidence, is not before us."

Plaintiffs in error cite, in behalf of their contention on this point, the case of *Entick* v. *Carrington*, 19 Howell's St. Trials, 1029, and *Boyd* v. *United States*, 116 U. S. 616. *Entick* v. *Carrington*, in which Lord CAMDEN delivered his celebrated opinion, which is regarded as one of the permanent monuments of the British constitution, was an action of trespass for entering the plaintiff's dwelling house in November, 1762, and breaking open his desks and boxes, and searching and examining his papers. The attempted justification was by virtue of a search warrant, which was different from that which had been in question in the prior case of Wilkes, since it specified' the name of the person against whom it was directed, but in respect to papers it was a general search warrant, not specifying any particular papers to be seized, and giving authority to take all books and papers of the party named, at discretion. The warrant was held invalid; but, manifestly, the question whether the papers illegally seized were competent testimony against Entick in a prosecution for crime did not arise.

The provisions of our State constitution, above quoted, are copied, almost literally, from articles 4 and 5 of the amend-

ments to the constitution of the United States. *Boyd* v. *United States, supra,* was an information against thirty-five cases of polished plate glass, for their forfeiture, on account of their fraudulent entry and importation, and E. A. Boyd & Sons were the claimants. On the trial of the cause it became important to show the quantity and value of the glass contained in twenty-nine cases previously imported. To do this, the district attorney offered in evidence an order made by the district judge under section 5 of the act of June 22, 1874, directing notice, under seal of the court, to be given to the claimants, requiring them to produce the invoice of the twenty-nine cases. The claimants, in obedience to the notice, but objecting to its validity and the constitutionality of the law, produced the invoice, and when it was offered in evidence objected to its reception, on the ground that in a suit for forfeiture no evidence can be compelled from the claimants themselves, and also that the statute, so far as it compels production of evidence to be used against the claimants, is unconstitutional and void. The court held that the proceeding was a "criminal case," within the meaning of that part of the fifth amendment which declares that no person "shall be compelled, in any criminal case, to be a witness against himself;" that the seizure or compulsory production of a man's private papers, to be used in evidence against him, is equivalent to compelling him to be a witness against himself, and, in a prosecution for a crime, penalty or forfeiture, is equally within the prohibition of the fifth amendment; and that when the thing forbidden in the fifth amendment,—namely, compelling a man to be a witness against himself,—is the object of a search and seizure of his private papers, it is "an unreasonable search and seizure," within the fourth amendment; and the conclusion of the court was, that the notice to produce the invoice, and the order by virtue of which it was issued, and the section of the statute which authorized the order, were unconstitutional and void, and that the inspection and admission in

evidence of the invoice were erroneous and unconstitutional proceedings.

The first ten articles of amendment to the constitution of the United States are merely limitations upon the powers of the national government; and that which was condemned in *Boyd* v. *United States* was the enforced production by the parties to the "criminal case" of evidence against themselves through and by means of an order made by the court, and a process, under the seal of the court, issued by virtue thereof, and the rulings of the court based upon such order and process, and the unconstitutional statute upon which they were predicated. So the provisions which we have above quoted from sections 6 and 10 of article 2 of the State constitution are limitations upon the powers of the State government, and have no reference whatever to or bearing upon the unauthorized acts of individuals. Said section 6 does not prohibit all searches and seizures, but only such as are "unreasonable," and the plain implication therefrom is, that a search-warrant may issue if it is for a reasonable search and seizure, and is based upon probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized. Division 8 of chapter 38 of the Revised Statutes designates the circumstances under which, and certain purposes for which, search warrants may be issued and goods and chattels seized. Said statute also states circumstances under which the person of one charged with felony may be searched for dangerous weapons, "or anything which may be used as evidence of the commission of the offense." But it is useless to examine the statute in detail for the purpose of ascertaining what kinds of searches and seizures are, in legislative contemplation, reasonable searches and seizures, for here there is no pretense that DeSell was armed with a search warrant when he searched for and seized the cheap jewelry that was given in evidence in this case. Indeed, he expressly states that he

had no search warrant, and no authority from any one to go to the rooms of the plaintiffs in error, or search them.

It is perfectly manifest, then, that there was no legal justi-. fication for the searching of the rooms and the seizure of the ' jewelry. The acts of DeSell were in violation of the rights of plaintiffs in error, and a trespass, for which they may hold· him legally accountable in a civil action. But what bearing does that have on the case at bar? Does the fact that DeSell gained knowledge of the facts in respect to which he testifies, by the commission of a trespass, prevent the State from having the benefit of such facts? If the jewelry which he produced . and identified at the trial was otherwise competent evidence, and tended to establish the issue, should it be excluded from , the jury merely because he gained possession of it by the commission of a trespass?

In the early case of *Jordan* v. *Lewis,* a very poor report of which is found in 2 Strange, 1122, and a much better report of which is given in a note to *Legatt* v. *Follervey,* 14 East, 302, Lord Chief Justice LEE ruled that the court could not refuse receiving in evidence an instrument which was there offered, and that the court could not take notice in what manner it had been obtained. And in *Legatt* v. *Follervey* Lord Chief Justice ELLENBOROUGH made a like ruling.

In *Commonwealth* v. *Dana,* 2 Metc. 329, the Supreme Judicial Court of Massachusetts said: "Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice of how they were obtained, whether

lawfully or unlawfully, nor would they form a collateral issue to determine that question." And, referring to the cases of *Jordan* v. *Lewis* and *Legatt* v. *Follervey,* the court further said: "We are entirely satisfied that the principle on which these cases were decided is sound and well established." It is to be noted that in *Commonwealth* v. *Dana,* as appears from the opinion of the court, the objection of the defendant's counsel to the introduction of the evidence was based on the ground that the 14th article of the Bill of Rights declared that "every subject has a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers and all his possessions. All warrants, therefore, are contrary to this right if the cause or foundation of them be not previously supported by oath or affirmation." And it further appears that the indictment and trial were in the municipal court, and that the search warrant had been issued from a police court..

We think that the cases last cited, as well as the present case, are clearly distinguishable from *Boyd* v. *United States.* In the latter case, the unconstitutional and erroneous order, process and procedure of the trial court compelled the claimants to produce evidence against themselves, and such order, process and procedure were also held to be tantamount to an unreasonable search and seizure, while here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to procure evidence from the defendants, and neither made orders nor issued process authorizing or purporting to authorize a search of premises or a seizure of property or papers, but simply admitted evidence which was offered, without stopping to inquire whether possession of it had been obtained lawfully or unlawfully. Courts, in the administration of the criminal law, are not accustomed to be over-sensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right. In 1 Greenleaf on Evi-

·dence, (Redfield's ed.) sec. 254 a, it is said: "Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered,· or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question." We think that the admission of the jewelry in evidence in this case was in violation of no constitutional right of plaintiffs in error growing out of the tortious means by which DeSell got possession of it. They voluntarily admitted, both prior to and at the trial, their former possession of it, and at the trial testified before the jury in explanation of such possession.

It is urged that the introduction of said jewelry in evidence was error, because it in no way tended to prove that plaintiffs in error stole the diamond ring. The evidence, very clearly, was not admissible for the purpose of showing that they were· the kind of men that would be likely to commit the offense· charged against them, or that they had been engaged in other like transactions. But here, an imitation diamond ring was substituted in the tray for the ring that was abstracted while they were in the store and examining the rings, and the abstracted ring was afterwards found in the street, nearly opposite to where they were overtaken and arrested. Their possession of other imitation diamond rings was a circumstance legitimately corroborative of the theory of guilt. It tended to show that they had the ability, or facilities and means, of committing the crime charged. The jury had a right to compare the imitation diamond ring found in the tray with the imitation diamond rings found in their possession. In *Spies* v. *The People,* 122 Ill. 1, certain dynamite bombs were admitted in evidence, and this court said: "The jury had a right to see them, compare their construction with the description of the bomb that killed the policemen, with a view.

to determining whether the accused was the maker of the weapon used or not."

Our conclusion is, that there was no error in admitting in evidence the testimony of DeSell and the jewelry which he identified.

Complaint is made that the court refused to give to the jury instructions 7 and 11 tendered by plaintiffs in error. Instruction 7 was well calculated to mislead the jury. It would likely have been understood by them to require from the prosecution a higher degree of evidence than evidence which established the guilt of the defendants beyond a reasonable doubt. From the changes wrung therein on the expression "entire satisfaction," it would probably have been understood that the evidence must show guilt beyond the possibility of a doubt, and that any doubt whatever that could be conjured up, no matter how unreasonable or far-fetched, would compel an acquittal.

If the jury had been told by instruction 11 that the burden of proving everything essential to a conviction was on the prosecution, and that it was not sufficient for a conviction to show that the diamond ring was stolen, without identifying the defendants as the perpetrators of the crime, the instruction would have been well enough. But such was not the instruction asked. To say that the burden of proving every material averment of the indictment lies on the prosecution, and that even if somebody stole the diamond ring, "yet defendants are not required to prove who committed the larceny," is a departure, in the last clause, from the premises laid down in the first, that was calculated to mislead the jury. The instruction excludes all consideration of the fact whether or not the evidence of the prosecution identified, *prima facie,* the defendants with the larceny committed. If the People proved the *corpus delicti,* as charged, and introduced evidence which, in the absence of contradiction or explanation, identified the defendants as the perpetrators of the offense beyond a reasonable doubt, it was all that was required of them. Assuming

8—138 Ill.

this to have been done here, it then devolved upon the defendants either to prove that some one else committed the larceny, or raise a reasonable doubt whether they or some one else committed it, or in some other way either show their innocence or raise a reasonable doubt of their guilt. We think there was no error in the refusal of the court to give these two instructions.

The jury was fully and fairly instructed in respect to the law of the case. The evidence justified the verdict of the jury. We find no substantial error in the record. The judgment is affirmed.                                    *Judgment affirmed.*

BAILEY, J.: I do not concur in the opinion of the majority of the court.