[Crim. No. 2388. In Bank.—February 21, 1922.]

# THE PEOPLE, Respondent, v. FRED H. MAYEN, Appellant.

[1] SEARCH AND SEIZURE—FOURTH AMENDMENT TO FEDERAL CONSTITU-
TION—APPLICATION OF.—The fourth amendment to the constitution
of the United States, relating to searches and seizures, only ap·
plies to the federal government and its agencies.

[2] ID. — SEARCH-WARRANT — DESCRIPTION OF PROPERTY — CONSTITU-
TIONAL LAW—PENAL CODE.—Under section 19 of article I of the
constitution, providing against unreasonable searches and seizures,
no search-warrant may lawfully issue, except upon oath or affirma-
tion, particularly describing the things to be seized; and under
section 1525 of the Penal Code such a warrant may not issue
except upon affidavit particularly describing the property sought
to be made the object of the search, and by sections 1528 and
1529 of said code the warrant itself must describe the property
with reasonable particularity.

[3] EVIDENCE—COMPETENCY—SOURCE.—Where competent evidence is
produced on a trial the courts will not stop to inquire or in-
vestigate the source from whence it comes or the means by which
it was obtained.

[4] SEARCH AND SEIZURE—UNLAWFUL SEIZURE—USE OF PROPERTY AS
EVIDENCE—FEDERAL RULE.—Where the federal government or its
agencies has obtained possession of the property of a defendant
through an unlawful search and seizure, and such defendant has
made a timely demand for the return thereof, which demand has
been denied, such property cannot be used in evidence against him
without violation of the fourth and fifth amendments to the federal
constitution.

[5] ID.—SECURITY AGAINST UNLAWFUL SEIZURE—CONSTITUTIONAL LAW
—EVIDENCE.—The seizure by officers of the law of private papers
and effects by unlawful and unauthorized entry and search, to be
used as evidence in criminal prosecutions of the persons from
whom taken, is a violation of the constitutional right to security
against unreasonable searches and seizures; and such constitutional
guaranty is one which should be zealously enforced in behalf of
every citizen; but the subsequent use of articles so taken as evi-
dence is not itself any part of the unlawful invasion of such con-
stitutional guaranty.

3. Admissibility against defendant of documents or articles taken
from him, notes, 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182; 59
L. R. A. 465; 8 L. R. A. (N. S.) 762; 34 L. R. A. (N. S.) 58;
L. R. A. 1915B, 834; L. R. A. 1916E, 716.

[6] ID. — RECOVERY OF PROPERTY UNLAWFULLY SEIZED — INDEPENDENT PROCEDURE.—A proceeding for the recovery of property unlawfully seized is independent of the criminal proceeding in which it is sought to use such articles as evidence.

[7] ID.—APPEAL—MATTERS REVIEWABLE ON.—Only matters incident to the cause of action on trial are subject to review on appeal therefrom, and for this reason an objection on the trial to the admission of evidence on the ground that it has been wrongfully seized does not lie, and cannot be reviewed on the appeal, and any right so involved must be raised in an independent proceeding.

[8] EVIDENCE—RIGHT OF ACCUSED TO REMAIN SILENT—CONSTITUTIONAL LAW.—Section 13 of article I of the state constitution and the fifth amendment to the federal constitution, providing that no person shall be compelled in any criminal case to be a witness against himself, means that he has the right at all the stages of the investigation to stand silent and inert before his accusers, and if he is required to contribute by word or act to the evidence against himself, his constitutional right is invaded.

[9] CRIMINAL LAW—ATTEMPT TO COMMIT CRIME.—If the actual transaction has commenced which would have ended in the crime if not interrupted, there is clearly an attempt to commit the crime.

[10] ID.—INDICTMENT—JOINDER OF CAUSES.—Where different counts of an indictment refer to entirely separate offenses, but which are of the same class, and closely related in the plan and scheme of their commission, they may be appropriately joined.

[11] ID.—CONFESSION—WITHDRAWAL OF TESTIMONY FROM JURY—CURING OF ERROR.—Where certain incriminatory statements made by the defendant to one of the arresting officers were admitted in evidence, but the trial court withdrew this part of the testimony from the jury with instructions to disregard it, the error, if any, was cured.

[12] ID.—ARGUMENT—COMMENT ON FAILURE OF DEFENDANT TO TESTIFY.—In a criminal prosecution where the defendant took the stand as a witness in his own behalf, the prosecution in argument was entitled to comment not only on what he said, but as to what was left unsaid which was pertinent to and within the scope of the matter to which he testified.

[13] ID.—MISCONDUCT OF DISTRICT ATTORNEY—REVIEW ON APPEAL.— It has been the disposition of the supreme court where timely objection was not made or where the court has by appropriate instructions to the jury withdrawn improper comment of the district attorney from their consideration, to deny a reversal, if the evidence in the case was such as to clearly support a conviction. Where there was reasonable ground to presume prejudice from such comment, it has been held to require a reversal.

[14] ID. — PREJUDICIAL MISCONDUCT — WHEN NOT REVERSIBLE. — In a
criminal prosecution, although the action of the district attorney
in commenting upon the failure of the defendant to testify in a
case in which he did not become a witness, which case, though
entirely separate, was joined in the indictment with a case in
which he testified, was clearly error, the judgment will not be re-
versed where it appears that there was not a miscarriage of justice.

[15] ID.—MISCONDUCT OF JUROR.—In a criminal prosecution the rights
of the defendant cannot be said to have been prejudicially
affected by the alleged misconduct of one of the jurors by reason
of a passing conversation with a member of the grand jury, dur-
ing the trial, who was in the courtroom at one of the adjourn-
ments, in which the grand juror remarked that he was a member
of the grand jury and interested in the case.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy
Attorney-General, John W. Maltman, Thomas Lee Wool-
wine, District Attorney, and Wm. J. Clark, Deputy Dis-
trict Attorney, for Respondent.

SLOANE, J.—The defendant appeals from a judgment of
conviction of grand larceny and of attempted grand lar-
ceny.

The case is before us upon an order for hearing in the
supreme court after judgment of reversal in division two
of the second district court of appeal.

The important point in issue and upon which the district
court of appeal set aside the verdict and reversed the judg-
ment of the trial court arose upon the admission in evi-
dence, on the trial, of certain incriminating articles of per-
sonal property which had been taken from the apartments
of defendant without his consent under the authority of an
alleged search-warrant.

The facts attending the taking, detention, and use of this
evidence as concisely stated by the district court of appeal
are as follows:

"After appellant was arrested his home was entered by
a detective in the service of the district attorney and articles

described as follows were taken from the place. Three pho-
tographs of appellant, four or more letters in the hand-
writing of appellant, addressed to his wife, three or more
letters written by Mrs. Mayen to appellant, a memorandum-
book, seven or eight plans and specifications of mining prop-
erty, and a valise containing papers, letter-heads, and news-
paper clippings. These were all delivered, by the officer, to
the custody of the district attorney. On the occasion of
the entry the detective was armed with a search-warrant,
issued pursuant to an affidavit which contained only the
following reference to the property sought to be seized after
search therefor: 'that personal goods and property, to-wit,
certain paraphernalia is now concealed in the house of'
appellant. The warrant itself described the property to be
seized merely as 'certain personal property used as a means
of committing a public offense, to-wit, attempted grand
larceny.' On the day of his trial, several hours before
the work of impaneling a jury was commenced, and, as it
was alleged, within four days after he had been advised
by counsel of his rights in the premises, appellant presented
to the trial court his motion for an order requiring the
district attorney to return to him the papers and other
articles which had been seized under the warrant. This
motion was made pursuant to a written petition substan-
tially in the form approved in *Weeks* v. *United States,* 232
U. S. 383 [Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834,
58 L. Ed. 652, 34 Sup. Ct. Rep. 341, see, also, Rose's U. S.
Notes], and upon the ground that the search-warrant was
invalid and ineffective and that, therefore, the seizure was
in violation of appellant's rights under the fourth and fifth
amendments to the constitution of the United States and
sections 13 and 19 of article I of the constitution of Cali-
fornia. The court denied the motion. Later, when certain
of the seized papers were offered in evidence, appellant
objected to their reception on the grounds upon which he
had made the motion, but the objection was overruled and
various of the documents were admitted.''

It is the contention of appellant that the search and
seizure were in violation of the fourth amendment to the
constitution of the United States and section 19 of article I
of the constitution of California, which provide that ''the
right of the people to be secure in their persons, homes,

papers and effects against unreasonable searches and seizures shall not be violated, and that no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the person or thing to be seized.''

It is also contended that the admission in evidence of articles so seized over the timely objection of the defendant is in violation of the provision of the fifth amendment to the constitution of the United States and section 13 of article I of the constitution of California, that no person shall be compelled in any criminal case to be a witness against himself.

[1] All consideration of the application of the federal constitution to this case may be at once eliminated, as it is well settled that the fourth amendment to the constitution of ·the United States, relating to searches and seizures, only applies to the federal government and its agencies. (*Weeks* v. *United States,* 232 U. S. 383 [Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341, see, also, Rose's U. S. Notes] ; *State* v. *Peterson,* 27 Wyo. 185 [13 A. L. R. 1284, 194 Pac. 342] ; *Gindrat* v. *People,* 138 Ill. 103 [27 N. E. 1085].) In the Weeks matter it was held that even where the matter was pending in the federal court, the unlawful search and seizure having been made before the finding of the indictment, and not by an officer of that court, the provisions of the constitution could not be invoked against the evidence so procured. Consequently, the rule adopted by the United States courts is not controlling authority here and is not necessarily applicable in principle to the interpretation of the state constitution on this point.

We are confronted, then, with the open question, unless it is foreclosed by the decisions of our own courts, whether the admission of the evidence complained of constitutes a violation of the constitutional rights of the appellant under sections 19 and 13 of article I of the constitution of this state.

[2] It must be granted, to begin with, that the search-warrant under which the effects of appellant were taken was invalid. It is declared in section 19 of article I of the constitution, after providing against unreasonable searches and seizures, that no search-warrant shall issue except upon

188 Cal.—16

oath or affirmation, particularly describing the things to be seized, and it is provided by section 1525 of the Penal Code that such a warrant may not issue except upon affidavit particularly describing the property sought to be made the object of the search, and by sections 1528 and 1529 that the warrant itself must describe the property with "reasonable particularity." As shown in the statement of facts, heretofore quoted, the affidavit in this case merely referred to the property to be taken as "personal goods and property, to-wit, certain paraphernalia," and the warrant contained no other description than "certain personal property used as a means of committing a public offense, to-wit, attempted grand larceny."

If it were conceded that the description in the warrant met the requirement of the code for "reasonable particularity," in view of the fact that all the information the affiant had in the matter was the admission of the defendant that he had enough evidence in his apartment to hang him, yet not even the meager description of the warrant was contained in the affidavit which was the source of the magistrate's authority to issue a search-warrant.

It must be admitted, then, that the search and seizure was unreasonable and unlawful and violated the rights of appellant as guaranteed by section 19 of article I of the constitution of California.

Without at all minimizing the gravity of such offense, or the sacredness of the right of every citizen to be secure in his person, home, and property from any unlawful invasion by the state, it does not follow that the subsequent detention and introduction in evidence of the property thus wrongfully taken constituted error on the trial of the appellant.

The trespass committed in the wrongful seizure of these personal effects by unauthorized officers, and the subsequent use of the same in evidence on the part of the prosecution, were in legal effect entirely distinct transactions with no necessary or inherent relation to each other.

There was nothing in the character of the articles taken, or in the fact that they belonged to the defendant, which affected their competency as evidence.

It is conceded that they were relevant and material to the case for the prosecution, and appellant's counsel themselves

claim that these personal effects were of such significance in the case as to determine the verdict against their client.

[3]   There is no rule better established or more universally recognized by the courts than that where competent evidence is produced on a trial the courts will not stop to inquire or investigate the source from whence it comes or the means by which it was obtained.

There is no need to elaborate this proposition. The general rule is thus stated by Greenleaf (1 Greenleaf on Evidence, sec. 254): ''Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not take notice of how they were obtained, whether lawfully, or unlawfully, nor will it form an issue to determine that question''; or, as stated in *Commonwealth* v. *Dana*, 2 Met. 329, where the supreme court of Massachusetts was considering such evidence offered in a lottery case: ''Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search-warrant was illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done, but this is no good reason for excluding the papers seized, as evidence. Where papers are offered in evidence the courts can take no notice how they were obtained nor would they form a collateral issue to determine the question.'' The decisions upholding this doctrine and covering most of the states of the Union, without a dissenting voice, so far as we have discovered, are too numerous to mention, but may be found collated in notes to *State* v. *Turner*, 136 Am. Rep. 135–153; *State* v. *Edwards*, 59 L. R. A. 465; L. R. A. 1915B, 834; L. R. A. 1916E, 74; Am. Dig., Searches and Seizures, 1920–1921. Even the United States supreme court decisions upon which appellant relies for a modification of the general rule stated accept the doctrine in its general application. (*Adams* v. *New York*, 192 U. S. 585 [48 L. Ed. 575, 24 Sup. Ct. Rep. 372, see, also, Rose's U. S. Notes]; *Weeks* v. *United States*, 232 U. S. 383 [Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341].)

In *Adams* v. *New York, supra,* Mr. Justice Day, who also delivered the opinion in *Weeks* v. *United States,* in applying the rule to the unlawful seizure of private papers of a defendant without authority of a search-warrant, which papers were afterward used in evidence over the objection of the defendant, says: "In such cases the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained," citing with approval the quotations heretofore made from Greenleaf and from the opinion in *Commonwealth* v. *Dana;* also quoting from *Commonwealth* v. *Tibbetts,* 157 Mass. 519 [32 N. E. 910], where it is said: "Evidence which is pertinent to the issue is admissible although it may have been procured in an irregular or even an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally, but his testimony is not thereby rendered incompetent."

The same principle is established in California under the decisions in *People* v. *Alden,* 113 Cal. 264 [45 Pac. 327], and *People* v. *LeDoux,* 155 Cal. 535 [102 Pac. 517]. In the latter case certain incriminating letters of the defendant, who was charged with murder, were obtained by a deputy sheriff from the house of defendant without authority of law. It was held in the opinion that "such search and seizure were absolutely unwarranted in law though had by an officer of the law. It was a clear violation of the constitutional guaranty, state and federal, of the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." Under this state of the case the opinion, after reviewing pertinent state and federal decisions as to the admissibility in evidence of the letters thus wrongfully procured, declares: "It thus appears that whatever wrong may be perpetrated by the invasion of one's constitutional rights against unreasonable search and seizure, the redress for that wrong is not in the exclusion of pertinent evidence which may be obtained by the seizure. The courts upon the mere question of admitting or rejecting evidence will not take cognizance of the mode of its production, unless it is shown that the defend-

ant has been compelled himself to give or produce it.' So it is said in *People* v. *Alden, supra,* 'nor does the competency of evidence in any way depend upon the means by which it is brought into the court, where it is offered in evidence.' The letters were, therefore, properly admitted in evidence.''

Appellant relies and the district court of appeal based its opinion in the judgment from which this hearing is granted upon certain decisions of the supreme court of the United States which it is claimed take the case from the application of the general rule heretofore discussed.

We approach a consideration of these decisions of the supreme court, and likewise the able and carefully considered opinion of the district court of appeal, with the utmost deference and respect. The federal decisions chiefly relied upon are *Boyd* v. *United States,* 116 U. S. 616 [29 L. Ed. 746, 6 Sup. Ct. Rep. 524, see, also, Rose's U. S. Notes] ; *Weeks* v. *United States,* 232 U. S. 383 [Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 41 Sup. Ct. Rep. 341], (heretofore cited), *Gouled* v. *United States,* 255 U. S. 313 [65 L. Ed. 647, 41 Sup. Ct. Rep. 261], and *Amos* v. *United States,* 255 U. S. 313 [65 L. Ed. 654, 41 Sup. Ct. Rep. 266].

[4] The general conclusion reached through these decisions is that where the federal government or its agencies has obtained possession of the property of a defendant through an unlawful search and seizure, and such defendant has made a timely demand for the return thereof, which demand has been denied, such property cannot be used in evidence against him without violation of the fourth and fifth amendments to the federal constitution.

The Boyd case is readily distinguishable from the matter before us. In that case a provision of the custom laws required that on demand of the government attorney the defendant must produce in court his private books, invoices, and papers, or else the allegations of the attorney in the premises shall be taken as confessed. This was held to be equivalent to authorizing an illegal search and seizure, and by requiring that defendant himself produce the evidence was, in effect, compelling him to become a witness against himself. It was naturally held that such a law was violative of both the fourth and fifth amendments.

The Weeks case and the Gouled case are much more closely in point in the facts presented. In the former an indictment was returned against the defendant Weeks charging him with use of the mails for the purpose of transporting certain lottery coupons or tickets, in violation of the federal statutes. The defendant was arrested by a police officer, so far as the record shows, without a warrant. Other police officers, without a search-warrant and without authority, entered his room and took possession of various papers and articles found there, which were afterward turned over to the United States marshal. Later the police officers, in company with the marshal, made another unauthorized entry of the premises, and, after further search, seized and carried away certain letters and envelopes belonging to defendant.

Before the time for the trial the defendant filed in the cause a petition alleging the unlawful search and seizure of his effects in violation of his constitutional rights, and the purpose of the district attorney to use the articles so seized as evidence against him on the trial, and demanded their surrender.

The court in which the matter was pending granted the petition except as to such articles as were relevant and pertinent to the case as evidence, and on the trial the articles retained were received in evidence over defendant's objections. After reciting the facts, the opinion of the supreme court proceeds (p. 393) : "The case in the aspect in which we are dealing with it involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused, seized in his house in his absence and without his authority, by a United States marshal holding no warrant for his arrest and none for the search of his premises. The accused, without awaiting his trial, made timely application to the court for an order for the return of these letters, as well as other property. This application was denied, the letters retained and put in evidence, after a further application at the beginning of the trial, both applications asserting the rights of the accused under the fourth and fifth amendments to the constitution. If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the fourth amendment

declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the constitution.'' After recognizing the rule theretofore stated in *Adams* v. *New York* and other authorities, but distinguishing the facts relied on by the government, the opinion continues (p. 398) : ''We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States acting under color of his office in direct violation of the constitutional rights of the defendant; that having made a seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed.'' As hereinbefore pointed out, the court limited its ruling to the papers taken by the United States marshal, on the ground that the first seizure was not by an officer amenable to the directions of the federal courts, and therefore his acts were not governed by the constitutional provisions referred to.

In *Gouled* v. *United States* some of the papers used in evidence had been taken from the premises of the defendant surreptitiously by one acting under directions of officers of the intelligence department of the army of the United States and others under search-warrants issued under authority of law and upon affidavits averring that there were in defendant's apartments certain papers relating to and used in the commission of a felony. Before trial a motion was made by the defendant Gouled for a return of the papers seized, which relief was denied, and when the motion was renewed at the trial, but before any evidence was introduced, it was denied and objection was made at the trial to the introduction of the papers taken without search-warrant, which objection was overruled. The papers so obtained and held were offered and received in evidence on the trial in behalf of the prosecution.

The supreme court in this case has taken an even more pronounced stand than in the Weeks case. The opinion, delivered by Mr. Justice Clarke, holds that the evidence so seized should have been excluded. The following conclu-

sions are reached in this opinion: (1) That no right of
search and seizure exists even under a search-warrant for
papers having only evidentiary value, and for the purpose
of *using the same in a criminal proceeding* against the per-
son from whose premises they are taken; (2) that if before
trial as timely a demand as the circumstances will allow is
made upon the court having control of such prosecution for
papers or effects seized by any officer of the federal govern-
ment under color of his office, for their surrender, upon a
showing that they were obtained by unlawful search and
seizure, such demand must be granted, and the use of such
papers and effects thereafter in evidence is reversible error,
and in violation of the rights of the defendant under both
the fourth and fifth amendments.

*Amos* v. *United States, supra,* in an opinion also prepared
by Mr. Justice Clarke, follows the same doctrine.

It will be noted that these decisions recognize the prevail-
ing doctrine that on the trial of one charged with crime the
court is not required upon a mere objection at the trial to
the competency, relevancy, and materiality of the evidence,
to investigate the manner in which the evidence offered
has been produced; that it is only where a timely motion or
proceeding has been instituted, setting up the wrongful
search and seizure and demanding a surrender of the prop-
erty and upon hearing denied, that such evidence may be
excluded; and that the federal courts will not hear such
application or investigate such complaint unless the seizure
was made by an officer or through the agency of the federal
government.

In other words, the use of such evidence is sustained un-
less the property was seized under the agency of the govern-
ment itself, and the aggrieved party has preserved his right
to object to its use by a timely application before the trial
for an order restoring to his possession the property unlaw-
fully seized.

In the instant case no federal question under the fourth
and fifth amendments is involved. We are only concerned
with the application of like provisions of our own state con-
stitution and criminal procedure to the facts before us.
The limitations laid down by the federal decisions cited to
the use in criminal cases of the class of evidence under dis-
cussion are therefore only controlling to the extent that

their reasoning on parallel lines, and the eminent source from which they proceed impels our judgment and assent.

It may be taken for granted that the provisions of our own constitution and those of nearly all the states of the Union against unreasonable searches and seizures, and protecting the citizen from being compelled in any criminal case to be a witness against himself, have been adopted, in almost the precise words and for the same reason, as in the federal constitution. They are safeguards designed to protect the intimate sanctity of the person and the home from invasion by the state. They are not intended primarily to secure the possession, use, or control of property, for they are not directed against the private unofficial trespasser. (*Weeks* v. *United States, supra; Gindrat* v. *People,* 138 Ill. 105 [27 N. E. 1085]; *United States* v. *O'Dowd,* 273 Fed. 600.) Much less is their primary object to enable the criminal to sequester and conceal the evidence of his crime so that it cannot be used against him. Only to the extent that the rejection of the use of such evidence will protect the citizen against the unlawful encroachments of state authority can it be justified.

In *Adams* v. *New York,* 192 U. S. 585 [48 Ed. 575, 48 Sup. Ct. Rep. 372], the federal supreme court says: "But the contention is that if in the search for instruments of crime, other papers are taken the same may not be given in evidence . . . We think they [the constitutional provisions] were never intended to have that effect, but are rather designed to protect against the compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizures of his papers and property, and to render invalid legislation or judicial proceedings having such effect."

As is said in *Williams* v. *State,* 100 Ga. 511, 520 [39 L. R. A. 369, 28 S. E. 624]: "We believe the framers of the constitution of the United States and of this and other states merely sought to provide against any attempt by legislation or otherwise to authorize, justify or declare lawful any unreasonable search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made

lawful; upon executives so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. : . . The office of the federal and state constitutions is simply to create and declare these rights. . . . With faithfully enforcing such laws as are thus provided, the responsibility devolving upon the executive and judicial branches must necessarily end. We know of no law of Georgia which renders inadmissible in evidence the fruits of an illegal and wrongful search and seizure. Nor are we aware of any statute from which it could be logically gathered that the admission of such evidence violates any recognized principal of public policy. Whether or not prohibiting the courts from receiving evidence of this character would have any practical and salutary effect in discouraging unreasonable searches and seizures, and thus tend towards preservation of the citizen's constitutional right to immunity therefrom, is a matter for legislative determination.''

[5] It may in this connection be noted that the decisions of our own court and of every other jurisdiction are in entire accord with the supreme court of the United States in holding that the seizure by officers of the law of private papers and effects by unlawful and unauthorized entry and search, to be used as evidence in criminal prosecutions of the persons from whom taken, is a violation of the constitutional right to security against unreasonable searches and seizures; and that such constitutional guaranty is one which should be zealously enforced in behalf of every citizen. But no authority, so far as we have been able to discover, has suggested that the subsequent use of articles so taken as evidence is in itself any part of the unlawful invasion of such constitutional guaranty. The search and seizure are complete when the goods are taken and removed from the premises. Whether the trespasser converts them to his own use, destroys them, or uses them as evidence, or voluntarily returns them to the possession of the owner, he has already completed the offense against the constitution when he makes the search and seizure, and it is this invasion of the rights

of privacy and the sacredness of a man's domicile with which the constitution is concerned.

The constitution and the laws of the land are not solicitous to aid persons charged with crime in their efforts to conceal or sequester evidence of their iniquity. From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transom-light. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment.

Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken. The federal authorities relied upon by appellant do not question the general acceptance of this doctrine by the courts, and only differentiate it, in the cases cited, on the ground that persons from whom personal effects are unlawfully taken are entitled to demand and recover possession of their property by application on motion, and that when they have made such timely demand to the tribunal controlling the custody of such property, there should not be an arbitrary refusal to grant the demand in order to hold the ill-gotten articles as evidence, and the admission of such property thereafter as evidence is held error.

[6] The right of one whose goods have been unlawfully seized to recover their possession, and that irrespective of its effect in depriving the state of their use in evidence, is not disputed, but the contention, which we think is maintained by the great weight of authority, is that the proceeding for such recovery is independent of the criminal proceeding in which it is sought to use such articles as evidence. Even conceding the right to demand such recovery by motion before the court in which such criminal action is pending, as is apparently the rule in the federal courts

and as recognized in some of the state decisions (*People* v. *Kinney,* 185 N. Y. Supp. 645; *State* v. *Peterson,* 27 Wyo. 185 [13 A. L. R. 1284, 194 Pac. 342]), upon what theory can it be held that such proceeding is an incident of the trial, in such a sense that the ruling thereon goes up on appeal as part of the record and subject to review by the appellate court? It seems to us rather an independent proceeding to enforce a civil right in no way involved in the criminal case. The right of the defendant is not to exclude the incriminating documents from evidence, but to recover the possession of articles which were wrongfully taken from him. That right exists entirely apart from any proposed use of the property by the state or its agents.

Its determination involves the framing of separate issues of fact as to the rights of possession of the goods and the method of seizure, by whom taken, and whether or not the trespass was committed by an agent of the state. The court having tried such issue, and, as in the case before us, denied the relief demanded, we question if under any procedure recognized in the state of California such ruling can be collaterally attacked. As well might a collateral attack upon a judgment-roll received in evidence on a trial be maintained on appeal therefrom on the ground that it was invalid because of some extrinsic fraud in its procurement. [7] Only matters incident to the cause of action on trial are subject to review on appeal therefrom, and for this reason it is held that an objection on the trial to the admission of evidence on the ground that it has been wrongfully seized does not lie, and cannot be reviewed on appeal, but that any rights so involved must be raised in an independent proceeding (10 R. C. L., p. 993; *State* v. *Dist. Court,* 59 Mont. 600 [198 Pac. 362]), and such is the effect of the rule in *Weeks* v. *United States* and *Gouled* v. *United States, supra,* as to the independent nature of the proceeding.

It is our conclusion that any rights determined under such independent proceeding cannot be reviewed under our procedure on the record of appeal from the action in which such evidence was used.

The fallacy of the doctrine contended for by appellant is in assuming that the constitutional rights of the defendant are violated by using his private papers as evidence against him, whereas it was the invasion of his premises and the

taking of his goods that constituted the offense irrespective of what was taken or of what use was made of it; and the law having declared that the articles taken are competent and admissible evidence, notwithstanding the unlawful search and seizure, how can the circumstance that the court erred in an independent proceeding for the return of the property on defendant's demand add anything to or detract from the violation of defendant's constitutional rights in the unlawful search and seizure.

There might be some reason, on grounds of public policy, for the state to refuse the use of evidence thus wrongfully seized, on the ground that its admission encourages and in a sense condones the lawless acts of overzealous officers of the law in their methods of obtaining evidence in criminal cases, but in the absence of any legislative or judicial declaration to that effect after the litigation of the question in numerous cases in nearly every existing state jurisdiction, dating back over a hundred years, as suggested in *Williams* v. *State, supra,* the courts may properly wait on legislative action to change the rule.

In the Gouled case the federal supreme court extends the protection of the fifth amendment to the constitution against this class of evidence, applying the rule announced in *Boyd* v. *United States, supra.*

With the utmost deference to the high authority from which this doctrine comes, we do not feel justified in accepting it as a rule of evidence under the law of California and in the application of our state constitution thereto.

[8]  Section 13 of article I of our constitution says, as does the fifth amendment to the federal constitution, that no person "shall be compelled in any criminal case, to be a witness against himself." This means, as we understand it, that one charged with the commission of a crime has the right at all stages of the investigation to stand silent and inert before his accusers. If he is required to contribute by word or act to the evidence against himself, his constitutional right is invaded. Such was the situation in *Boyd* v. *United States, supra,* which is cited as authority on this point in the decision last referred to. But to apply such an interpretation to the surreptitious or forcible seizure of incriminating evidence, even from the possession of the defendant, would bar the use of all information emanat-

ing from the acts or possessions of such defendant not voluntarily furnished. In the face of such an interpretation of the constitution, how could the law authorize the search of the person of one arrested for crime, and the use of evidence of his guilt thus secured? How could a witness who had by trespass or dissimulation witnessed or overheard incriminating acts or statements of the accused be permitted to testify? How could articles used in commission of a crime be taken from the premises of the defendant by authority of a search-warrant to be used in evidence, as is permitted by section 1524 of our Penal Code? In each instance suggested the incriminating facts would be involuntarily forced from the possession of the accused.

In *Weeks v. United States,* as heretofore pointed out, the supreme court refused to take cognizance of the use in evidence of property unlawfully seized by one not an agent of the government; yet what possible distinction could exist so far as the use of such evidence was concerned as affecting the defendant's rights under amendment five of the constitution, whether this evidence was secured against him by the wrongful act of an officer of the court or of a private citizen?

In this case a considerable part at least of the property seized and used in evidence and the return of which and its exclusion on the trial was demanded seems to have consisted of paraphernalia designed for use in similar swindles to that of which the defendant was accused. It was subject to seizure under a proper search-warrant by virtue of subdivisions 3 and 4 of section 1524 of the Penal Code, and if it had been more fully described in the affidavit and search-warrant would have been properly taken.

The invasion of appellant's rights in respect to these articles was technical rather than substantial.

We concur with the authorities cited that even the technical rights of citizens to be protected from unlawful searches and seizures should be zealously safeguarded and the infringements thereof adequately punished; but we are not prepared to impose upon the courts of this state the duty and burden of injecting into a criminal prosecution the collateral investigation of every objection that may be raised as to the source from which and the manner in which evidence in the hands of public prosecutors has been obtained.

The parties aggrieved should be left to independent action to protect their constitutional rights, and obtain redress for their infringement, and if in such a proceeding error is committed, it should be determined in some appropriate method of review upon its own record, and not collaterally on appeal from a judgment of conviction in a criminal case in which the seized property was used as evidence.

On the other points presented by defendant's appeal we are unable to find any error that would justify a reversal of the judgment of conviction.

The evidence was clearly sufficient to sustain the verdict on both counts. The defendant was charged with grand larceny and attempted grand larceny. The means used for obtaining possession of the stolen money in the one count and in attempting to obtain possession of it in the other was by trick and device. The case for the prosecution was testified to by the same accomplice under both charges, and in each separate count by the party who was the victim of the offense. The testimony of the accomplice was corroborated in practically every detail by the respective victims, and was further substantially supported by the documentary evidence secured by the search and seizure. The details of the transaction in the two cases were so nearly identical in the scheme resorted to in gaining the confidence of the victims in order to secure possession of their money, that the evidence in each was undoubtedly competent as to the other.

It is contended, however, as to the charge of attempt to commit grand larceny, that however conclusive the evidence may be to establish the probative facts relied on, such facts are not sufficient to constitute an "attempt" to commit a crime within the meaning of the law. Briefly stated, the evidence shows that the defendant ingratiated himself into the confidence of one Weiss, and through a confederate, who appeared in the plot as a casual acquaintance, framed up a stock gambling investment which from inside information was represented to be a sure thing for a large profit. Defendant and the confederate supplied a certain part of the funds, and Weiss was induced to agree to contribute his share. He procured the money which was to have been delivered to one of the confederates, to be invested.

He was asked by defendant to turn over the amount agreed upon, but before the payment was actually made the defendant was arrested. The plan had gone far beyond the point of mere preparation. The actual attempt was made to get possession of the money. The arrest was made while the parties were on their way from Los Angeles to Oakland, where the deal was to be consummated.

[9] "If the actual transaction has commenced which would have ended in the crime if not interrupted, there is clearly an attempt to commit the crime." (*People* v. *Stites*, 75 Cal. 570 [17 Pac. 693]; *People* v. *Compton*, 123 Cal. 403 [56 Pac. 44]; *People* v. *Paluma*, 18 Cal. App. 131 [122 Pac. 431]; *People* v. *Moran*, 123 N. Y. 257 [20 Am. St. Rep. 732, 10 L. R. A. 109, 25 N. E. 412].)

Defendant's petition for severance was properly denied. Section 954 of the Penal Code as amended in 1915 [Stats. 1915, p. 744], provides that the indictment or information may charge two or more "different offenses of the same class of crimes or offenses under separate counts," and the prosecution is not required to "elect between the different offenses or counts set forth in the indictment or information."

[10] In this case the counts of the indictment refer to entirely separate offenses, but they are of the same class, and so closely related in the plan and scheme of their commission, as to be very appropriately joined, under the code provision cited.

[11] Appellant assigns as error the admission in evidence of the alleged confession of the defendant. The defendant made certain incriminatory statements and admissions to one of the arresting officers. Part of these statements were purely voluntary and unsolicited. Other statements were made after defendant had been informed that his interrogator was a police officer, but the information was given in pursuance of an attempt on the part of the defendant to corrupt the officer into confederating with him, and in the belief that he had succeeded, and with the expectation that the officer would corruptly use the information in defendant's behalf. This is not such a situation as shown in *People* v. *Quan Gim Gow*, 23 Cal. App. 507 [138 Pac. 918], relied on in support of appellant's contention. There was no inducement or threat in the sense that renders

a confession inadmissible in evidence. However, the trial
court withdrew this part of the testimony from the jury
with instructions to disregard it, so that if there was error
in its admission it was cured by such instruction.

[12] The specification of misconduct of the counsel for
the prosecution representing the district attorney's office
has some foundation. There were repeated comments of
the prosecuting officer which were open to censure. For the
most part the court corrected them so far as possible by
instructions to the jury. There were some matters passed
over, however, to which objections should have been sus-
tained, and the comments specifically withdrawn from the
jury, but in view of all the circumstances attending the
trial, the exchange of caustic repartee by counsel on both
sides, we cannot believe that the jury regarded the objec-
tionable remarks of the district attorney's office other than
part of the bickerings of counsel. The most serious ground
of misconduct was the repeated reference of the prosecuting
attorney to the failure of the defendant to testify to cer-
tain matters. This would have been utterly without excuse
had the defendant not gone upon the witness-stand at all.
He did, however, take the stand as a witness in his own
behalf, and as to the points he was examined upon opposing
counsel were entitled to comment not only concerning what
he said but as to what was left unsaid which would have
been pertinent to and within the scope of the matter to
which he testified.

The defendant only testified in the Evans case. All he
testified to was that he did not know Evans and that he
never saw him until long after the time of the alleged
offense. This was equivalent to denying that he had any
of the transactions with Evans testified to by witnesses for
the prosecution. To test his denial of acquaintance with
Evans it would be proper cross-examination to question him
as to every alleged transaction claimed to have occurred
between him and Evans. "A defendant cannot by testi-
fying to a state of things contrary to and inconsistent with
the evidence of the prosecution, thus indirectly denying the
testimony against him, but without testifying expressly with
relation to the same facts, limit the cross-examination to
the precise facts concerning which he testifies. He can be
cross-examined with respect to the facts or denials which

188 Cal.—17

are necessarily implied from the testimony in brief as well as with respect to facts which he expressly states." (*People* v. *Teshara,* 141 Cal. 633 [75 Pac. 338].) We see no reason why on such testimony, within the scope that may be covered by cross-examination, comment should not be made as to the unsatisfactory nature of the defendant's testimony and the degree to which it fails to satisfactorily meet the testimony for the prosecution for which it was offered as a denial.

"If the defendant in a criminal action voluntarily testifies for himself, the same rights exist in favor of the state's attorney to comment upon his testimony, or his refusal to answer any proper question, or to draw all proper inferences from his failure to testify upon any material matter within his knowledge, as with other witnesses." (*State* v. *Harrington,* 12 Nev. 125; *Diggs* v. *United States,* 220 Fed. 545 [136 C. C. A. 147].)

Under such interpretation of the law any reference to and criticism of the defendant's testimony in the Evans case and of his failure to go more fully into the incriminatory matters covered by his general denial may be justified.

There was no such excuse, however, for the repeated comment upon the failure of the defendant to testify in the Weiss case concerning which he did not become a witness. The district attorney in the course of his argument repeatedly called the attention of the jury, as a significant fact pointing to his guilt, to the failure of the defendant to take the stand and deny the charges in the Weiss case. Among the comments made were the following: "They don't even deny the Weiss proposition. Now, remember that this fellow who sits here has not denied that all of this was his property. . . . Now, you know he wouldn't even ask if these villainous things were taken from his apartment. He wouldn't ask him even that. He wouldn't even ask him if he ever saw old man Weiss. . . . I can't see what in the world they put the fellow on the stand for to deny that he ever saw Evans. That is the extent of it. He does not deny that he attempted to put this thing over on the old man Weiss. . . . Do you realize that this defendant—his counsel—they have confessed the Weiss count? In other words, they haven't seen fit to even have him deny the truth of that thing."

It must be remembered that the Evans case and the Weiss case, though joined in one indictment, were separate and distinct offenses and, as the jury was instructed, the evidence in each case must be separate, and that, because such defenses are joined in one indictment, it should in no way prejudice the jury in the separate consideration of either.

Timely objection was made by defendant's counsel to these comments of the district attorney, but the court failed to sustain the objection or to cause their withdrawal from the consideration of the jury. Neither was there anything in the instructions to indicate to the jurors that they should not consider to his prejudice the failure of the defendant to testify.

[13] It has been the disposition of this court where timely objection was not made or where the court has by appropriate instructions to the jury withdrawn such improper comment from their consideration to deny a reversal, if the evidence in the case was such as to clearly support a conviction. Where there was reasonable ground to presume prejudice from such comment it has been held to require a reversal. (*People* v. *Tyler,* 36 Cal. 522; *People* v. *Brown,* 53 Cal. 66; *People* v. *McGungill,* 41 Cal. 429; *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599]; *People* v. *Morris,* 3 Cal. App. 1 [84 Pac. 463]; *People* v. *Mirandi,* 38 Cal. App. 179 [175 Pac. 653].)

[14] It is likely that the license exercised and permitted on the part of the district attorney in this respect was based on the theory that in taking the witness-stand and denying any connection with the Evans affair, the defendant had completely let down the bars. Both causes of action were tried together, and the witness was qualified by the oath administered to testify to both counts in the indictment. But as already pointed out, he only testified in the one case and was entitled to the full benefit of section 1323 of the Penal Code as to the other. The conduct of the district attorney was clearly error, and would demand a reversal of the verdict in the Weiss matter, if it appeared that any miscarriage of justice had resulted.

Under the testimony presented to the jury we fail to see how it could have avoided a verdict of conviction.

The evidence against the defendant was conclusive and practically uncontradicted. It is true it depended in part upon the testimony of an accomplice, but Weiss himself gave detailed evidence along substantially the same line, and the seized articles given in evidence were strongly corroborative. Only the rejection of the testimony of both of the principal witnesses for want of credibility could have defeated a conviction, and the reference to defendant's failure to testify could hardly have served to discredit the evidence of the prosecution. While in no manner justifying the improper comments of the district attorney, we think it is a case for the application of section 4½ of article VI of the constitution.

[15] Neither do we think the rights of the defendant were prejudicially affected by the alleged misconduct of one of the jurors by reason of a passing conversation with a member of the grand jury who was in the courtroom at one of the adjournments, in which the grand juror remarked that he was a member of the grand jury and was interested in the case. Whether the remark was made in explanation of his presence there, or to preclude further conversation with the juror, we cannot see that it carried any implication which would affect the mind of a juror in arriving at a verdict.

A number of exceptions are taken to the rulings of the court in giving and refusing instructions. There were very many instructions offered and it would be strange if the rulings were all beyond criticism, but, taken as a whole, the law of the case is fairly presented by the instructions given.

The judgment is affirmed as to both charges of the indictment.

Shaw, C. J., Lawlor, J., Shurtleff, J., and Waste, J., concurred.

WILBUR, J., Concurring.—I concur.

In regard to the question of whether or not the conduct of the district attorney resulted in a miscarriage of justice, I think it should be stated that in imposing sentence the trial judge provided that the terms should run concurrently, so that the conviction upon the Weiss count does not in-

crease the term of imprisonment, and I am somewhat influenced in my conclusion that there has been no prejudicial error by this fact in addition to those stated by Justice Sloane.