## THE STATE v. POMEROY, *Appellant.*

### Division Two, November 19, 1895.

1. **Criminal Law**: LOTTERY: DRAWING IN THIS STATE. In a prosecution under section 3832, Revised Statutes, 1889, for making or establishing a lottery as a business or avocation in this state, it is not necessary, in order to convict, to show that the drawings were to occur in this state.

2. ———: ———: CONSTITUTION: EVIDENCE. It is not a violation of the constitutional provision that no one shall be compelled to testify against himself in a criminal case to introduce in evidence, in a prosecution for establishing a lottery, tickets, papers, etc., taken from the person and premises of the accused, even though they were seized without authority of law.

3. **Constitution.** Section 11 of the bill of rights of the constitution of this state was intended as a restriction on the powers of government, and was not designed as a restraint on the unauthorized acts of individuals.

4. **Criminal Law**: LOTTERY: INSTRUCTION. It is error in a prosecution for establishing a lottery as a business to instruct the jury to convict defendant if he was "substantially carrying on the business of a lottery."

*Appeal from St. Louis Criminal Court.*—HON. HENRY L. EDMUNDS, Judge.

REVERSED AND REMANDED.

Defendant was indicted and convicted for the crime of establishing a lottery in the city of St. Louis and from the judgment rendered herein he appeals to this court.

The testimony in substance, discloses these facts: Defendant had an office on the third floor of a building on the northeast corner of Sixth and Chestnut streets,

in the city of St. Louis, where he ostensibly conducted a real estate business. In the month of June, 1894, Granberry, a police officer in plain clothes, visited the office, and, finding defendant in charge, represented himself as a stenographer for a large, well-known whole-sale house in the city, saying that he had been handling the tickets of several lottery concerns, but that he and his customers were not satisfied with results, and wanted to try the tickets defendant was handling, those of L. E. Winn & Company whose names appear as agents on advertising ticket purporting to be issued by the company mentioned in the indictment, and which ticket was introduced and read in evidence.

Defendant offered to place lottery tickets in Granberry's hands for sale, with a commission on sales of twenty-five per cent, which was accepted, and he gave the officer for sale $15 worth of tickets, a part being of the value of one dollar each, a part fifty cents and a part twenty-five cents. These tickets were taken by defendant from a drawer in his desk which "seemed to be full of tickets." He gave the officer at the same time a number of circulars and lists of purported draw-ings, also advertising slips bearing numbers which pur-ported to be themselves good for prizes in the event of such numbers "being drawn." These tickets and other documents purported to be issued by "the Louisana Lottery Company of Kansas City, New York, San Francisco, and Montreal (Canada), and that the draw-ings would be had at Kansas City, Kansas, on the second Tuesday of each month during 1894." No money was paid by the officer at the time, but it was agreed that he was to report to defendant upon the following Monday what success he met with in the sale of the tickets.

On Monday Granberry returned to the office, rep-resented that he had disposed of ten fifty cent tickets,

and paid defendant therefor $5; defendant paid him $1.25 as commission on such reported sale, and gave him ten more tickets of the same class to sell.   Granberry then stated that his customers wanted to know when their tickets would be "cashed," in the event they should draw prizes, and defendant responded that he would cash all prizes drawn at his office on the twenty-first of the month, whether the amount was $5 or $5,000; he also told the officer that he was the general manager of the concern; was in St. Louis on a large salary; had a large number of "venders" under him; that he rented the office himself and paid for it a monthly rent of $15; that the "company" had large deposits in the different banks in the city; that the drawing took place in Kansas City, Kansas, etc.   On the occasion of these visits defendant appeared to have charge of the office alone (there being an office boy in the anteroom), and all the lottery literature was kept in the desk at which he sat, and of which he appeared to have sole possession and control.

Two or three days afterward Granberry came again with two other officers, and defendant was taken into custody.   An examination was made of his desk and office furniture, and there was found a large number of tickets, list of lottery drawings, advertising slips, etc.   There were no "paraphernalia" of a drawing in the room.   When defendant was taken to the police station he was searched, and there were found on his person some "bunches" of tickets and a small pocket memorandum book containing entries of names and amounts which (he admitted afterward upon the witness stand) were the names of persons to whom he had issued lottery tickets, and the amount in value of the respective quantities, ranging from $5 to $900.

The "tickets" thus acquired and taken from the defendant, upon their face were in the form following:

| Class | The Louisiana Lottery Company of Kansas City, New York, San Francisco, Montreal, Canada, will draw at Kansas City, Kansas, Tuesday, July 10, 1894.   This one-twentieth ticket entitles the holder to one-twentieth of such prize as may be drawn to its number in the within named drawing, if presented for payment within three months thereof. |
|---|---|
| Twentieth | |
| 25 Cents | |
| | four cipher eight three<br>4     0     8     3 |

There was also testimony given as to the manner in which lotteries are customarily drawn by wheels, cards, tubes, etc., and the manner in which the "prizes" are allotted.

Defendant offered no evidence in his behalf except his own testimony, which was substantially that he had no connection whatever with the Louisiana Lottery Company, except as a mere "vender," that he just took their tickets and sold them on commission, and made out of them what he could.  He denied having told Granberry that he was one of the managers, or received a salary, or at any time "cashed" prize tickets; he admitted that he knew it was against the law to sell lottery tickets.

In connection with general instructions upon the credibility of witnesses, competency of defendant as a witness and reasonable doubt, the court charged the jury as follows:

"1.   A distribution of prizes of some value by chance or lot constitutes a lottery or policy.

"2.   If you believe from the evidence in the cause that the defendant, W. J. Pomeroy, at the city of St. Louis, state of Missouri, within three years next before the finding of the indictment, did unlawfully and intentionally make and establish, or aid or assist in making and establishing, as a business or avocation, a

lottery, policy, or scheme of drawing in the nature of a lottery, known as the Louisiana Lottery Company, of Kansas City, New York, San Francisco and Montreal, Canada, whereby money to any extent was to be disposed of by lot or chance, you will find defendant guilty as charged in the indictment, and assess his punishment at, etc.; and unless from the evidence you so find, you will acquit him.

"3.   The court instructs the jury that the mere fact that the defendant sold lottery or policy tickets is not of itself sufficient to prove the charge made in the indictment, unless they further find from the facts and circumstances given in evidence that at the time set out in the indictment, and within three years prior thereto, the defendant had established, or aided or assisted in establishing, a lottery, policy, or scheme of drawing in the nature of a lottery, as a business or avocation, or was substantially carrying on the business of a lottery, policy, or scheme of drawing in the nature of a lottery."

No instructions were asked by defendant, and at the close of the evidence the jury found him guilty and assessed his punishment at twelve months in the city jail.

The grounds of the motion for a new trial, so far as necessary to discuss them, were that there was an absolute failure of evidence showing the guilt of defendant of the offense with which he was charged; that the court admitted improper evidence, and that the court misdirected the jury in reference to the law of the case.

*John A. Gernez* for appellant.

(1)  A conviction can not be sustained in the entire absence of evidence, direct or circumstantial, that the offense charged was committed in the county

specified in the indictment. *State v. McGinnis*, 74 Mo. 245; *State v. Meyer*, 64 Mo. 190; *State v. Miller*, 71 Mo. 89; *State v. King*, 111, Mo. 576; *State v. Hughes*, 82 Mo. 86. (2) The constitutional provision that no person shall be compelled to testify against himself in a criminal case, prohibits the seizure of one's private papers and books in order to obtain evidence against him. U. S. Constitutional Amendments, 4 and 5; Missouri Constitution, secs. 11 and 23, art. 2; *United States v. Boyd*, 116 U. S. 616; *Entic v. Carrington*, 19 Howell's State Trials, 1029; *State v. Davis*, 108 Mo. 666. (3) Appellant complains not of instructions 1 nor 2 but does of 3, in so much as it seeks to modify instruction 2, by adding the words "substantially carrying on the business of lottery, etc." A certain state of facts either constitutes a certain crime or it does not. There are no shadings or degrees of that crime. When that crime is proven it ends it. And when a jury are invited to consider whether facts substantially prove a crime or not, they are invited to an investigation of which the law knows not.

*R. F. Walker*, attorney general and *C. O. Bishop* for the state.

(1) The instructions given by the court fully covered the law of the case, and directed the jury to acquit the appellant, if they believed his testimony, viz.: That he was simply a vender of lottery tickets and had no other connection with the alleged lottery scheme. The definition of "lottery" is that adopted by this court in *State v. Mumford*, 73 Mo. 647. (2) The evidence on the part of the state warranted the verdict. One who aids in the establishing of a lottery is guilty of a felony, while one who merely sells tickets is guilty only of a misdemeanor. But it appears from the tes-

timony on the part of the prosecution that not only did the appellant have large quantities of tickets, advertising circulars, drawing lists, and the like in his possession, but that he issued "bunches" of tickets, not in the way of a sale, but on commission, to be sold by the taker at a fixed rate of commission; and that by his own confession he was general manager of the concern, and had a large number of venders under him; was in St. Louis on a large salary, and cashed all the prizes drawn to the extent of $5,000. Moreover, the pseudo vender (officer Granberry) was to report all his sales to him (appellant), returning the proceeds of such sales, and receiving a commission on same of twenty-five per cent, paid by appellant. This testimony clearly tended to show that appellant was not simply a vender, but an officer or conductor of the lottery scheme. And it was admitted by him in his testimony that it was a lottery scheme. *State v. Kaub*, 15 Mo. App. 433; (affirmed by this court, 90 Mo. 197. (3) The evidence admitted by the court as to the tickets, circulars, etc., was competent, though taken from appellant. The rule is well settled that burglars' tools, etc., and documents, such as forged notes, lottery tickets, and unlawful articles, may be used in evidence, even though illegally obtained. *Seibert v. People*, 143 Ill. 571; *State v. Flynn*, 36 New Hampshire, 64, a case involving liquors kept for sale contrary to law, and *Commonwealth, v. Dana*, 2 Metcalf (Mass.), 329, a case involving lottery tickets. Said the court in that case (p. 337): "When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question," following *Legatt v. Tollervey*, 14 East's Rep. 302. *State v. Kaub, supra; State v. Davis*, 80 Mo. 53. It can not be justly claimed that a defendant is thus compelled to testify

against himself, for, *first*, he has no right to have in his possession contraband articles, contrary to law; and, *second*, the articles speak for themselves; and, *third*, while the officers may be answerable, if the seizure be illegal, the articles themselves, if pertinent, may be introduced upon the trial, whether obtained by force, fraud, or illegal search warrant, and are not evidence given by the accused. *State v. Kaub*, and other cases, *supra*. (4) No instructions were asked by the appellant, nor does the motion for new trial urge error in failing to fully instruct the jury as to the law of the case. There was no testimony offered by appellant that was excluded.

SHERWOOD, J.—We regard the evidence, the substance of which has already been set forth, as sufficient to prove both the venue of the offense and the fact that the defendant made and established, and aided and assisted in making and establishing a lottery in this state.

Under the provisions of 3832, Revised Statutes, 1889, upon which the indictment is drawn, it does not appear to be necessary that the drawing of a lottery, when established, should occur or be intended to occur in this state; it seems to be sufficient if the lottery is made or established "as a business or avocation in this state." It must be confessed that if a lottery could be established as a business in this state, and then no convictions could follow because no drawings were had in this state, that this would go a long ways toward defeating a very wise and salutary provision of the law. The gist of the offense is plainly the establishing of a lottery as a business in this state. To prove this, it is not necessary to show that any *drawings* had occurred, or ever would occur. Their non-occurrence could neither diminish or condone an already completed offense.

This view renders immaterial the evidence of Granberry with reference to the manner or method of conducting the drawing of the Louisiana State Lottery at New Orleans.

Touching the introduction of the lottery tickets, papers, etc., taken from the person of defendant and from his desk, and introduced in evidence against him over his objection, it is insisted that the rights of defendant guaranteed to him by sections 4 and 5 of the amendments to the federal constitution, and sections 11 and 23 of our bill of rights, providing "that no person shall be compelled to testify against himself in a criminal case," prohibit the seizure of one's private papers and books in order to obtain evidence against him, and that, consequently, those rights were violated by the seizure and introduction in evidence of the papers aforesaid. But the authorities do not sustain this position.

In Massachusetts the provisions of the fourteenth article of the bill of rights of that state were similar to section 11 of our own constitution, and the objection of the defendant's counsel was like that made in the case at bar, and it was also urged in the case referred to, as another objection, that the seizure of the lottery tickets and materials for a lottery, for the purpose of using them as evidence against defendant, was virtually compelling him to furnish evidence against himself, in violation of another article in the declaration of rights. But the court, in answering these objections, said:

"In cases of the seizure of stolen goods on search warrants, the goods have almost in all cases been given in evidence against the offender, and no one, I apprehend, ever supposed that a seizure for that purpose was a violation of the declaration of rights; and in this respect there is no distinction between the seizure of stolen goods and the seizure of lottery tickets. * * * Admitting that the lottery tickets and materials were

illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question. This point was decided in the cases of *Legatt v. Tollervey*, 14 East, 302, and *Jordan v. Lewis*, 14 East, 306, note; and we are entirely satisfied that the principle on which these cases were decided is sound and well established." *Com. v. Dana*, 2 Metc. 329. To the same effect see 1 Greenl. Evid [14 Ed.], sec. 254a; *State v. Flynn*, 36 N. H. 64; *Siebert v. People*, 143 Ill. 571; *Gindrat v. People*, 138 Ill. 103.

In *Gindrat's* case, Mr. Justice BAKER when contrasting *Boyd v. United States*, 116 U. S. 616, on which defendant relies, with the above cited cases in 14 East, and 2 Metcalf, and the case then being decided, said: "We think that the cases last cited, as well as the present case, are clearly distinguishable from *Boyd v. United States*. In the latter case, the unconstitutional and erroneous order, process, and procedure of the trial court compelled the claimants to produce evidence against themselves, and such order, process, and procedure were also held to be tantamount to an unreasonable search and seizure, while here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to procure evidence from the defendants, and neither made orders nor issued process authorizing, or purporting to authorize, a search of premises or a seiz-

ure of property or papers, but simply admitted evidence
which was offered, without stopping to inquire whether
possession of it had been obtained lawfully or unlaw-
fully.    Courts, in the administration of the criminal
law, are not accustomed to be oversensitive in regard
to the sources from which evidence comes, and will
avail themselves of all evidence that is competent and
pertinent and not subversive of some constitutional or
legal right.''

In *State v. Flynn, supra*, BELL, J., speaking as the
organ of the court, said: ''It seems to us an unfounded
idea that the discoveries made by the officers and their
assistants, in the execution of process, whether legal or
illegal, or where they intrude upon a man's privacy
without any legal warrant, are of the nature of admis-
sions made under duress, or that it is evidence furnished
by the party himself upon compulsion.    The informa-
tion thus acquired is not the admission of the party,
nor evidence given by him, in any sense.    The party
has in his power certain mute witnesses, as they may
be called, which he endeavors to keep out of sight, so
that they may not disclose the facts which he is desir-
ous to conceal.    By force or fraud access is gained to
them, and they are examined, to see what evidence they
bear.    That evidence is theirs, not their owners.    If a
party should have the power to keep out of sight, or
out of reach, persons who can give evidence of facts he
desires to suppress, and he attempts to do that, but is
defeated by force or cunning, the testimony given by
such witnesses is not his testimony, nor evidence which
he has been compelled to furnish against himself.    It
is their own.    It does not seem to us possible to estab-
lish a sound distinction between that case, and the case
of the counterfeit bills, the forger's implements, the
false keys, or the like, which have been obtained by
similar means.    The evidence is in no sense his.''

These authorities are conclusive on the question; there was no error, therefore, in admitting the evidence referred to.

Furthermore, section 11, of our bill of rights, was intended as a restriction on the powers of government, and not designed as a restraint on the unauthorized acts of individuals.

But one point remains for discussion: As before stated, that defendant "did make and establish, and did aid and assist in making and establishing as a business and avocation in the said state of Missouri and city of St. Louis, a lottery, policy, and scheme of drawing in the nature of a lottery," etc. But it is one thing to make and establish a lottery as a business and avocation, and quite another thing to substantially carry on the business of a lottery, something not charged in the indictment. Consequently the giving of the third instruction, already set forth, was error, for which the judgment should be reversed and the cause remanded. All concur.