## STATE OF MISSOURI, Respondent, v. OTT POPE, Appellant.

Springfield Court of Appeals, July 8, 1922.

1. **CRIMINAL LAW: Objection During Trial that Evidence was Obtained Without Proper Search Warrant, Properly Overruled.** In a prosecution under Revised Statutes 1919, section 6588, as amended by Laws 1921, p. 414, for having possession of articles used in the production of intoxicating liquors, an objection raised after the State had opened its case, and introduced a witness, to introduction of testimony as to what officers, who searched defendant's premises, found, on the ground that the search warrant was invalid, was properly overruled, since the objection came too late.

State v. Pope.

2. **INTOXICATING LIQUORS:** Evidence Held Sufficient to Support Conviction of Possession of Articles Fitted for Use in Production of Intoxicating Liquor. In a prosecution under Revised Statutes 1919, section 6588, as amended by Laws 1921, p. 414, for having possession of articles fitted for use in production of intoxicating liquor, evidence *held* sufficient to support a conviction.

Appeal from Ripley County Circuit Court.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*J. H. Keith* and *Chas. B. Butler* for Appellant.

(1) Penal Statutes are to be strictly construed for the benefit of the citizen. Such statutes are to be strictly construed in those parts which are against persons charged with their violation, but liberally construed in those parts which are in their favor. State v. McClain, 49 Mo. App. 398; State v. McCance, 110 Mo. 398; State v. Howard, 137 Mo. 298; State v. Bryant, 90 Mo. 534; 36 Cyc. 1180; 36 Cyc. 1186; State v. Balck, 178-392. (2) There was no substantial evidence to support the verdict of the jury, and the court erred in refusing defendant's instruction in the nature of a demurrer at the close of the State's case, and again at the close of the whole case. And where there is no substantial evidence to support the verdict the judgment of the circuit court will be reversed. State v. Paris, 259 Mo. 435; State v. Johnson, 259 Mo. 346; 17 C. J. 367; State v. Ferguson, 221 Mo. 524; Kelley's Criminal Law and Practice, sec. 462; Holmes v. U. S. 275 Fed. Rep. 49. (3) The court erred in admitting evidence on the part of the State of the finding of the barrel, keg, worm and mash on search made by the officers of defendant's private dwelling and premises adjoining, by means of a search warrant issued to search the store, shop and stand of defendant, or of the search made with no warrant at all, or no warrant legally issued to search the private·dwelling and premises of defendant. 4th and 5th Amen. U. S. Con.;

Holmes v. U. S., 275 Fed. 49, and cases cited; Dukes v., U. S., 275 Fed. 142, and cases cited; Amos v. U. S., 41 Sup. Ct., 266.

No brief for respondent.

BRADLEY, J.—Defendant was charged by information with having in his possession "a still, doubler, worm, wormtub, a mash tub, a fermenting tub used and fitted for use in the production of intoxicating liquor," contrary of the provision of section 6588, Revised Statutes 1919, as amended, Laws 1921, p. 414. The jury were instructed that if they found from the evidence that the defendant unlawfully had in his possession "a worm, wormtub, or mash tub used or fit for use in the production of intoxicating liquor" then they would find defendant guilty. Defendant was found guilty and his punishment fixed at a fine of $300, and one year in jail. In due time he filed his motion for a new trial and also a motion in arrest. These were overruled, and he appealed.

The principal questions raised in the motion for new trial and considered in defendant's brief are the sufficiency of the evidence and the legality of a search warrant issued by the clerk of the circuit court on the affidavit of the prosecuting attorney to search defendant's dwelling. The search warrant does not appear in the record, but the trial proceeded on the theory that such a warrant was issued, and it was spoken of during the trial as though it existed. Counsel in their brief say: "We presumed at the trial there had been a search warrant issued by the clerk to search the private residence of the defendant, and objected to the admission of evidence accordingly, but we now fail to find any search warrant at all in the files of the case authorizing the officer to search the private dwelling, although a statement and affidavit was filed in vacation of court by the prosecuting attorney for the issuing of one. The sheriff testified that he had a search war-

rant and under it searched defendant's dwelling. The warrant was issued under and by the authority of section 6595, Revised Statutes 1919, as amended in 1921. This affidavit was signed by the prosecuting attorney, and was duly sworn to before the clerk of the circuit court on November 4, 1921, was filed, and the search warrant immediately issued, and under this warrant the sheriff and city marshal, acting as the sheriff's deputy for the occasion, entered and searched defendant's dwelling. The building was occupied by defendant, his two children, and his mother. The mother owned the building and perhaps most of the furniture, but defendant furnished everything for the family, and the place was his dwelling. The sheriff found on the outside of the house, but under the eaves thereof, a sixteen-gallon barrel, and a five-gallon keg. The sixteen-gallon barrel had about a half bushel of meal in the bottom, and was filled or nearly so with water, and this mixture had commenced to sour or ferment. The keg had a copper worm in it, and this worm "fit a small hole in the bottom side of the keg." In the house the sheriff found a sack of what he took to be brown sugar, but did not examine, and also a copper boiler on the cook stove. The sheriff took "about a gallon of the soured stuff" and poured out the remainder. He also took the copper worm, and the worm and the mash were produced in evidence at the trial, and the sheriff and his deputy were permitted over defendant's objections to testify as to what they saw, and what they found in the search. Other places under the control of defendant were searched under a separate warrant, and some bottles and fruit jars were found, but no intoxicating liquor of any kind was found at any place. Defendant and his mother testified that the meal was put in the barrel to make chicken feed; and it was made up of some spoiled meal. They also testified that the keg with the worm in it had been about the place for two or three months, and all this time had been in plain view of anyone about the place, and had been played with by the children. Defendant

claims that he found the keg with the worm in it on the railroad right of way near Doniphan one night and carried it home and threw it down, and that it had been about the place ever since. The boiler on the stove was the property of the mother and fit a place for it on the stove where served as a reservoir and had so served for over ten years. There was no evidence that the boiler had been tampered with in any manner so as to make it suitable to use in connection with the copper worm for the manufacture of whiskey.

When the State opened its case and had the sheriff on the stand, and had got down to the point the defendant made this objection: "By Judge KEITH: Now, if Your Honor please, I desire to object to that testimony based upon this search warrant; in the first place, because the search warrant wasn't legally issued; the statute provides that before a private dwelling can be searched under this law, that application for issuing such warrant must be made to the court, and that a showing upon that application must be made to the court in session, or a private dwelling can't be searched; that a search warrant issued by the court, upon a hearing upon an application made by the State, and then, upon proper showing, the court may issue such warrant; and that wasn't done in this case." The objection was overruled and exception saved. At the close of the direct examination the defendant moved to strike out the evidence given by the sheriff on the same grounds as stated in his objection to the introduction of the evidence. This motion was denied and exception saved. The same objections, ruling and exception were made as to the evidence of the city marshal who accompanied the sheriff and assisted in executing the search warrant. The State offered in evidence the mash, and the worm. Objection was made, but overruled, and exception saved. Defendant offered a demurrer at the close of the State's case, and at the close of the whole case, but was overruled, and saved exception.

Defendant contends that the search warrant was illegally issued, and is therefore void. If that were the case defendant is in no position to complain, because of the manner in which he sought to exclude the evidence obtained by virtue of the search warrant. In State v. Pomeroy, 130 Mo. 489, 32 S. W. 1002, it appears that the defendant was indicted and convicted for the crime of establishing a lottery. Defendant was deceived, and led to believe he was dealing with a bona-fide customer. One day the supposed customer, an officer, came to defendant's office in company with other officers and defendant was arrested, his desk searched without warrant, and papers tending to incriminate were taken. After defendant was taken to the police station he was searched and other articles were taken from him, and these articles were such as to tend to incriminate. In that case it was insisted that the lottery tickets and papers taken from the defendant's person, and from his desk, and introduced in evidence against him, transgressed his rights guaranteed by the Fourth and Fifth Amendments to the Federal Constitution, and by sections 11 and 23 of our Bill of Rights. It was held that the evidence, even though obtained illegally, was nevertheless admissible; that section 11 of our Bill of Rights is a restriction on the powers of government, and was not designed as a restraint on the unauthorized acts of individuals. Our Supreme Court in the Pomeroy Case in answering the contention that the evidence there in question was obtained in violation of section 11 of our Bill of Rights quoted with approval from Commonwealth v. Dana, 2 Metcalf 329, a Massachusetts case where a similar question was considered, as follows: "In cases of the seizure of stolen goods on search warrants, the goods have almost in all cases been given in evidence against the offender, and no one, I apprehend, ever supposed that a seizure for that purpose was a violation of the declaration of rights; and in this respect there is no distinction between the seizure of stolen goods and the seizure of lottery tickets, . . . Admitting that the lottery tickets and materials were

illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice of how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question.''

Answering the contention that the admission of the evidence in the Pomeroy case transgressed defendant's rights under section 23 of our Bill of Rights the court quoted with approval from State v. Flynn, 36 N. H. 64, as follows: ''It seems to us an unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon compulsion. The information thus acquired is not the admission of the party nor evidence given by him in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal. By force or fraud access is gained to them, and they are examined, to see what evidence they bear. That evidence is theirs, not their owners. If a party should have the power to keep out of sight, or out of reach, persons who can give evidence of facts he desired to supress, and he attempts to do that, but is defeated by force or cunning, the testimony given by such witnesses is not his testimony, nor evidence which he has been compelled to furnish against himself. It is their own. It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained, by similar means. The evidence is in no sense his.''

Our Supreme Court in State v. Sharpless, 212 Mo. 176, 111 S. W. 69, again gave specific approval to the rule as laid down in the Pomeroy Case. In the Pomeroy Case the court adopted what the Illinois Supreme Court said in Gindart v. People, 138 Ill. 103, 27 N. E. 1085, in distinguishing Boyd v. United States, 116 U. S. 616. In the Pomeroy Case and the Sharpless Case objection was made to the introduction of the evidence in the usual course when the trial was proceeding. Both cases hold in effect that when a trial is proceeding and papers are offered in evidence that the court will not then stop to ascertain how the papers were obtained, whether legally or illegally, "nor would they form a *collateral* issue to determine that question." Adams v. People, 48 Law. Ed. 575, 192 U. S. 585, was on a writ of error to the Supreme Court of the State of New York. Adams was convicted of the crime of knowingly having in his possession certain gambling paraphernalia used in the game commonly known as *policy* in violation of the Penal Code of the State. [176 N. Y. 351, 68 N. E. 636.] Certain papers were alleged to have been unlawfully seized and used in evidence against the accused in contravention of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. In the Adams Case the defendant merely made objection in the course of the trial to the introduction of the alleged wrongfully obtained evidence. [People v. Adams, 85 App. Div. 83, N. Y. Supp. 481.] The Supreme Court of the United States ruled as did our Supreme Court in the Pomeroy Case, and cited that case among others to the same effect.

In Weeks v. United States, 58 Law. Ed. 652, 232 U. S. 382, it appears that defendant was convicted in the District Court for the Western District of Missouri upon the charge of the use of the mails for the purpose of transporting certain coupons or tickets representing chances or shares in a lottery or gift enterprise. The facts are set out as follows: "The defendant was arrested by a police officer, so far as the record shows,

without warrant, at the Union Station in Kansas City, Missouri, where he was employed by an express company. Other police officers had gone to the house of the defendant and being told by a neighbor where the key was kept, found it and entered the house. They searched the defendant's room and took possession of various papers and articles found there, which were afterwards turned over to the United States marshal. Later in the same day police officers returned with the marshal, who thought he might find additional evidence, and being admitted by someone in the house, probably a boarder, in response to a rap, the marshal searched the defendant's room and carried away certain letters and envelopes found in the drawer of a chiffonier. Neither the marshal nor the police officers had a search warrant.'' Before the time for the trial defendant filed the following petition or motion: ''Now comes defendant and states that he is a citizen and resident of Kansas City, Missouri, and that he resides, owns, and occupies a home at 1834 Penn Street in said city. That on the 21st day of December, 1911, while plaintiff was absent at his daily vocation, certain officers of the government whose names are to plaintiff unknown, unlawfully and without warrant or authority so to do, broke open the door to plaintiff's said home and seized all of his books, letters, money, papers, notes, evidences of indebtedness, stock certificates, insurance policies, deeds, abstracts, and other muniments of title, bonds, candies, clothes, and other property in said home, and this in violation of sections 11 and 23 of the Constitution of Missouri, and of the Fourth and Fifth Amendments to the Constitution of the United States; that the district attorney, marshal, and clerk of the United States court for the western district of Missouri took the above described property so seized into their possession, and have failed and refused to return to defendant any portion of same, to-wit: (Here follows description) and certain other property which plaintiff is now unable to describe. That said property is being unlawfully and improperly held by said district attorney, marshal, and clerk, in violation of defendant's rights

under the Constitution of the United States and the State of Missouri. That said district attorney purposes to use said books, letters, papers, certificates of stock, etc., at the trial of the above entitled cause and that by reason thereof and of the facts above set forth defendant's rights under the amendments aforesaid to the Constitution of Missouri and the United States have been, and will be violated unless the court order the return prayed for; wherefore, defendant prays that said district attorney, marshal, and clerk be notified, and that the court direct and order said district attorney, marshal, and clerk, to return said property to said defendant.''

Upon consideration of the petition the court directed the return of such property as was not pertinent to the charge, but denied the petition as to pertinent matter, reserving the right to pass upon the pertinency at a later time. After the jury had been sworn and before any evidence was given, the defendant again urged his petition for the return of his property, which was denied. Upon the introduction of the papers during the trial the defendant objected on the ground that the papers had been obtained without a search warrant, and by breaking open his home in violation of the Fourth and Fifth Amendments to the Constitution of the United States, which objection was overruled. Error was assigned because the court refused to grant the petition for the return of the property, and in permitting the papers to be used in evidence. The Supreme Court in an opinion by Mr. Justice DAY discusses at length the question raised; and reached the conclusion that the defendant sought the return of his papers in a timely motion, and that they were wrongfully obtained in violation of his constitutional rights. In the discussion of the case this appears: ''What, then is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested, to discover

and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. [Citing cases.] Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained— of which we shall have occasion to treat later in this opinion. Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused.''

To the same effect are Gouled v. United States, United States Supreme Court Advance Opinions, April 1, 1921, p. 311, and Amos v. United States, United States Supreme Court, Advance Opinions, April 1, 1921, p. 316. The Fourth Amendment to the Constitution of the United States does not apply to the States (National Safe Deposit Co. v. Stead, 58 Law. Ed. 504, 232 U. S. 58), and we have considered the question here in the view of the holdings of the United States Supreme Court on similar questions to indicate the procedure necessary to reach the question of the admissibility of evidence obtained under a void search warrant or without any warrant. We are not passing upon the validity of the warrant in the case at bar, we are merely holding that the defendant did not take the proper steps to raise the question of the admissibility of the evidence of which he complains. The practice of filing a preliminary motion to determine the admissibility of evidence obtained under a search warrant has not been before any appellate court of this State so far as we know, but such procedure is clearly suggested in the State v. Pomeroy, 130 Mo. 489, 32 S. W. 1002, supra. The United States Supreme Court in Adams v. People, 48 Law. Ed. 575, 192 U. S. 585, followed and cited the same authorities quoted and followed in the Pomeroy case, holding in effect that an objection during the trial to the evidence alleged to have been wrongfully obtained comes too late, and that the court would not stop in the midst of the trial to determine such collateral question. When the question was raised directly in a proper manner, and before the trial in Weeks

v: United States, 58 Law. Ed. 652, 323 U. S. 382, the court approved that manner of procedure, and pointed out why the question was then for determination, and why it was not in the Adams Case. The petition set out, supra, in the Weeks Case was for the return of the property alleged to have been unlawfully seized and also to determine the admissibility of the evidence obtained. Cases might arise, and no doubt will, where contraband property, seized under our prohibition statute, could not be lawfully returned, because of its nature, but such would not affect the admissibility of the evidence obtained by an unlawful search. The admissibility of the evidence would depend upon the legality of the search and seizure when raised in the proper manner.

We do not deem it necessary to consider at length defendant's ground that the evidence is not sufficient to support the verdict. The evidence is set out substantially, supra, and we think it sufficient. Other grounds assigned in the motion for a new trial are not well taken. The judgment should be affirmed, and it is so ordered. *Cox, P. J.*, and *Farrington, J.*, concur.