HANTZ ET UX. *v.* STATE OF INDIANA.

[No. 13,609.   Filed May 8, 1929.   Transfer denied January 29, 1931.]

*D. D. Nemeth* and *Walter R. Arnold,* for appellants.
*Arthur L. Gilliom* and *James M. Ogden,* Attorney-Generals, and *Harry L. Gause,* Deputy Attorney-General, for the State.

McMAHAN, P. J.—Appellants were indicted and convicted of violating the Prohibition Law, §§4 and 24, Acts 1925 p. 144, §§2717, 2740 Burns 1926. The indictment is in three counts: (1) for selling; (2) for possessing intoxicating liquor; and (3) for maintaining a common

nuisance. A trial by jury resulted in a conviction of each appellant on each count. The errors assigned are the overruling of a motion for a new trial, and the overruling of a motion in arrest of judgment.

Appellants contend the verdict is not sustained by sufficient evidence, and that it is contrary to law. The first count charged a sale of intoxicating liquor to Arthur Ghrist. Arthur Ghrist was a witness and testified that in June, 1925, he was at appellants' place of business with Ed. Allen, who has since died; that appellant Steve Hantz was behind the counter when Allen spoke to him, and that Steve told them to go into the back room; that they went back there and bought three drinks of whisky from Mrs. Hantz, and paid her 25 cents a drink. Steve Hantz testified that he never saw Ghrist in his place of business and that he knew nothing about his wife selling him any liquor. Mrs. Hantz denied having sold liquor to any one. Appellants also contend the evidence does not show the sale to Ghrist was made in St. Joseph County, Indiana, as charged in the indictment. The evidence conclusively shows that appellants conducted a soft-drink parlor and lunch stand at a designated place in South Bend, Indiana. Ghrist testified that he lived in South Bend, knew appellants, that he was in their place of business in June, 1925, and bought the liquor while there. The case was tried at South Bend. The evidence is sufficient to sustain a finding that the place of business where Ghrist said he bought the liquor was in South Bend; and we know judicially that South Bend is in St. Joseph County, Indiana. There is no claim that appellants conducted a business, or had a place of business, at any place other than at South Bend.

The police searched appellants' place of business in June, 1925, at a time when Mrs. Hantz and her daughter and two men were present. A glass of whisky was found

on the kitchen cabinet, another glass of whisky was found on a table in the kitchen, a dollar bill was lying on the table, and a fruit jar partly filled with whisky was found in a room next to the kitchen. Another search was made in August, 1925, when a 10-gallon keg of whisky was found buried in the wall under the stairway in the basement. Appellants disclaim ownership of the keg of whisky and desire the court to draw the inference that it belonged to some one who operated the place before they took possession two years before. They deny having sold any intoxicating liquor to any one, and, in explanation of the liquor which the police testified was found in June, 1925, appellant Steve says that was "fixed," intimating the police had planted the liquor in his place of business for the purpose of manufacturing evidence to convict him.

Mrs. Hantz claims that, being a married woman, the evidence is not sufficient to overcome the presumption that whatever she did was done by virtue of the coercion of her husband. She testified she had a soft-drink parlor and lunch room; she cooked the lunches and her husband looked after the outside interests and that she was there when Ghrist claimed he bought the liquor. The husband testified that he did not know anything about his wife selling intoxicating liquor. There is no evidence that what she did was done in the presence of her husband. In any event, this defense is rather inconsistent with her claim that she never sold any liquor. The evidence is sufficient to overcome the presumption that Mrs. Hantz was acting under the coercion of her husband. See *Stadia* v. *State* (1929), 89 Ind. App. 192, 166 N. E. 25.

The evidence shows possession of intoxicating liquor, sale of same, and that the place kept by appellants had the reputation of being a place where such liquor was sold as a beverage, and is sufficient to sustain the verdict.

The next contention is that the court erred in admitting State's exhibits 1, 2 and 3 in evidence. In this connection, appellants undertake to challenge the validity of the two search warrants. The only State's exhibits introduced in evidence are Exhibits A, B and C. In order that we may not be accused of being hypercritically technical, we will assume that appellants refer to Exhibits A, B and C, instead of Exhibits 1, 2 and 3. Exhibit A is the keg of whisky found August 8, while Exhibits B and C are the glasses and the whisky found June 10. The last two exhibits and the testimony relating to the search made June 10 were admitted without objection. The first witness for the State told of the search made in August, described the finding of the keg of whisky hidden in the wall in the basement and said that Exhibit A was the keg of whisky so found, and that both appellants were present when the whisky was found. After the cross-examination of this witness, appellants introduced the affidavit for the search warrant, the search warrant under which the August search was made, and the return thereon in evidence, and then objected "to the introduction of the evidence found on this search," without stating any reason for such objection, and without making any motion to strike out any part of the testimony of the witness. The trial court, in overruling the objection, called attention to the fact that the evidence had been introduced without any objection. This is the only place in the record, so far as we are advised, where any objection was made to the admission of any evidence. Yet we are now asked to reverse this cause because of an alleged invalidity of the search warrant under which the August search was made.

Appellants were present at the time of the search in August and saw the keg of whisky and knew it had been seized by the officers under the search warrant, and made no move to suppress the evidence until after one witness,

without objection, had testified to the circumstances attending the search and to the finding of the whisky, and Exhibit A was introduced in evidence without objection.

It is well settled that objections to the admissibility of evidence, unless timely made, are waived. The admissibility of evidence ascertained by virtue of an illegal search warrant is no exception to the rule. Indeed, the great weight of authority, federal and state, is to the effect that when property has been unlawfully seized, or when evidence has been unlawfully procured, a motion for the return of such property or to suppress such evidence must be timely made, or the right is lost.

The general rule of practice is that where property has been seized under authority of a search warrant, a petition for the return of such property, when proper, or to suppress the evidence learned by the search, must be timely made, and that where such petition is not timely made, the court will not pause or delay the trial to determine how the possession of the evidence was obtained. While no hard and fast rule has been adopted, the almost universal rule is that the court, will not, after the actual commencement of the trial by the introduction of evidence, entertain such a motion, except where knowledge of the possession of the evidence by the prosecution, was first learned by the defendant during the introduction of the evidence, as happened in *Gouled* v. *United States* (1921), 255 U. S. 298, 65 L. Ed. 647; *Youman* v. *Commonwealth* (1920), 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303.

The rule at common law was as above stated. It was adopted in Massachusetts in 1841, *Commonwealth* v. *Dana* (1841), 2 Metc. (Mass.) 329, and has since been consistently adhered to by that court. This rule was

followed by the Supreme Court of the United States, *Adams* v. *New York* (1904), 192 U. S. 585, 48 L. Ed. 575, and has never been departed from by that court except under peculiar circumstances, and where the defendant did not, prior to the trial, have an opportunity to present a petition for the return of the property or to suppress the evidence. *Weeks* v. *United States* (1913), 232 U. S. 383, 58 L. Ed. 652; *Silverthorne Lumber Co.* v. *United States* (1919), 251 U. S. 385, 64 L. Ed. 319; *Gouled* v. *United States, supra; Amos* v. *United States* (1920), 255 U. S. 313, 65 L. Ed. 654; *Agnello* v. *United States* (1925), 269 U. S. 20, 70 L. Ed. 145; *Segurola* v. *United States* (1927), 275 U. S. 106, 72 L. Ed. 186; *Marron* v. *United States* (1927), 275 U. S. 192, 72 L. Ed. 231; *Olmstead* v. *United States* (1928), 277 U. S. 438, 72 L. Ed. 944; *Cogen* v. *United States* (1929), 278 U. S. 221, 49 Sup. Ct. 118, 73 L. Ed. 275.

In *Silverthorne Lumber Co.* v. *United States, supra,* an order had been made for the production of certain books and papers before the grand jury. The books were not produced, and the parties were indicted and placed under arrest. Without a shadow of authority, government agents, while the defendants were detained by the arresting officers, went to the defendants' office and took all books and papers found. An application was made as soon as might be for a return of what had been so unlawfully taken. The application was timely made and was made before trial.

In *Weeks* v. *United States, supra,* a motion for return of property seized by unlawful search was made before trial and sustained in part and ruling reserved as to balance to be passed upon later. After the jury had been sworn, but before any evidence was heard, the defendant again urged his motion for the return, which was overruled. The court called attention to the fact that it was not a case where the court was asked to stop the trial in order

to consider the illegal means by which proofs, otherwise competent, were obtained. The Adams case was reviewed and the rule there announced apparently approved, the court saying: "The decision in that case rests upon incidental seizure made in the execution of a legal warrant, and in the application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony, competent in a criminal case, comes."

*Gouled* v. *United States, supra,* relates to the admission in evidence of a paper of evidentiary value only, surreptitiously taken by an agent of the government from the defendant's office without a search warrant, and to the admission in evidence of certain other papers of like character taken at later dates under search warrants. The defendant had no knowledge that the first paper had been taken from him until during the progress of the trial, and, immediately upon learning that the government had possession of it, he objected to its admission in evidence. The papers taken under the search warrants were not contraband property, the possession of which was unlawful. The defendant, before the trial, made a motion for the return of the papers seized under the search warrants. This motion was denied. It was renewed at the trial before any evidence was introduced and again denied, and, over the objection, the papers were introduced in evidence. It was held that the motion for the return of the paper surreptitiously taken was timely made and should have been sustained. As to the papers taken under the search warrants, it was held that the government had no such interest in them as to authorize their seizure under the search warrants, and, for that reason, it was error to overrule the motion for their return. The question last considered related to papers of evidentiary value only, unlawfully seized, where a motion for their return was made before trial, and denied and later renewed on the trial when the papers

were offered in evidence. In this connection, the court said:

"It is plain that the trial court acted upon the rule, widely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard-and-fast formula to every case, regardless of its special circumstances. We think, rather, that it is a rule to be used to secure the ends of justice under the circumstances presented by each case; and where, in the progress of the trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission, or a motion for their exclusion, and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

The same court in *Olmstead* v. *United States, supra,* referring to the Gouled case, and speaking through Chief Justice Taft, said, it "carried the inhibition against unreasonable searches and seizures to the extreme limit. Its authority is not to be enlarged by implication and must be confined to the precise state of facts disclosed by the record."

In *Amos* v. *United States, supra,* government officers entered the defendant's home *in his absence* without a search warrant, and illegally seized certain property. After the jury was sworn, but before any evidence was introduced, the defendant filed a petition for the return of the property. This was denied and the trial proceeded, and, after the government witnesses had described how the property was seized without a search warrant, a motion to strike out their testimony was overruled.

The government contended that the petition for the return of the property having been filed after the jury was sworn was too late. The court held otherwise, saying the Gouled case, which was written by the same judge and decided the same day, controlled, but the rule announced in the Adams case was not questioned.

In the Agnello case, the court, answering the contention of the government, that where no application for the return of the property had been made, the court would not pause in the trial to determine a collateral issue, called attention to the fact that the defendant had testified that he never had possession of the property seized, and had never seen it until it was produced in court, and said: "There is nothing to show that, in advance of its offer in evidence, he knew that the government claimed it had searched his house and found cocaine there, or that the prosecution intended to introduce evidence of any search or seizure. It would be unreasonable to hold that he was bound to apply for the return of an article which he maintained he never had."

In *Segurola* v. *United States, supra,* the evidence on which the defendant was convicted, had been procured and ascertained by an unlawful search. No motion was filed prior to the trial for a return of the liquor, or to suppress the evidence. On the trial, the officers testified, without objection, to the finding of the liquor, and no evidence was offered to dispute the testimony of these witnesses. When the liquor was offered in evidence, it was objected to. The objection was overruled. Later, the defendant moved to suppress the liquor on the ground that the search was unlawful. After holding that there was sufficient uncontradicted evidence to sustain the verdict, the court, speaking through Chief Justice Taft, said: "Moreover, the principle laid down by this court in *Adams* v. *New York*, 192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372, and recognized as

proper in *Weeks* v. *United States*, 232 U. S. 383, 395, 58 L. Ed. 652, 656, L. R. A. 1915B 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C 1177, and in *Marron* v. *United States*, 275 U. S. 192, 48 Sup. Ct. Rep. 74, applies to render unavailing, under the circumstances of this case, the objection to the use of the liquor as evidence based on the 4th Amendment. This principle is that, except where there has been no opportunity to present the matter in advance of trial, . . . a court, when engaged in trying a criminal case, will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property, which are material and properly offered in evidence, because the court will not, in trying a criminal case permit a collateral issue to be raised as to the source of competent evidence. To pursue it would be to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation and which is wholly independent of it. In other words, in order to raise the question of illegal seizure, and an absence of probable cause in that seizure, the defendants should have moved to have the whisky and other liquor returned to them as their property and as not subject to seizure or use as evidence. To preserve their rights under the 4th Amendment, they must at least have seasonably objected to the production of the liquor in court. This they did not do, but waited until the liquor had been offered and admitted, and then for the first time raised the question of legality of seizure and probable cause as a ground for withdrawing the liquor from consideration of the jury. This was too late."

In *Marron* v. *United States, supra,* decided the same day as was the Segurola case, the court reviewed the Adams case, and held it did not support the government in its contention that the ledger and bills there involved were lawfully seized under the search warrant.

The last reference to this subject by the Supreme Court of the United States, so far as we are advised, is in *Cogen* v. *United States, supra,* where the court again recognized the rule laid down in the Adams case by quoting from the Segurola case the statement that, "A court, when trying a criminal case, will not take notice of the manner in which witnesses have possessed themselves of papers and property which are material and properly offered in evidence," and added the following: "Hence, a defendant will, ordinarily, be held to have waived the objection to the manner in which the evidence has been obtained unless he presents the matter for the consideration of the court seasonably in advance of the trial; and he does this commonly by a motion made in the cause for the return of the property and for the suppression of the evidence. . . . If the motion is denied, the objection to the admissibility as evidence is usually renewed when the paper is offered at the trial. And, although the preliminary motion was denied, the objection made at the trial to the admission of the evidence may be sustained."

A few of the other federal cases to the same effect are: *United States* v. *O'Dowd* (1921), 273 Fed. 600; *Nunes* v. *United States* (1928), 23 Fed. (2d) 905; *Samson* v. *United States* (1928), 26 Fed. (2d) 769; *Laughter* v. *United States* (1919), 259 Fed. 94; *Youngblood* v. *United States* (1920), 266 Fed. 795; *Wiggins* v. *United States* (1921), 272 Fed. 41; *Farmer* v. *United States* (1915), 223 Fed. 903.

The last word from a federal court upon this subject is found in *Day* v. *United States* (1929), 31 Fed. (2d) 71, where it was held that error could not be predicated on the action of the court in overruling a motion, at the close of the evidence, to exclude testimony of search and seizure, where the defendant had ample time before trial to present the question. The court quotes at length

from the Segurola case and cites many other federal authorities in support of the rule.

Practically all of the states, where the question has been presented, follow the rule announced in the Adams case, as is evidenced by the following cases: *People* v. *Mayen* (1922), 188 Cal. 237, 205 Pac. 435, 24 A. L. R. 1383; *Williams* v. *State* (1897), 100 Ga. 511, 39 L. R. A. 269, 28 S. E. 624; *Jackson* v. *State* (1903), 118 Ga. 780, 45 S. E. 604; *State* v. *Wansgaard* (1928), 46 Idaho 20, 265 Pac. 671; *State* v. *Dawson* (1925), 40 Idaho 495, 235 Pac. 326; *Gindrat* v. *People* (1891), 138 Ill. 103; *People* v. *Brocamp* (1923), 307 Ill. 448, 138 N. E. 728; *State* v. *Tonn* (1923), 195 Iowa 94, 191 N. W. 530; *State* v. *Rowley* (1923), 197 Iowa 977, 195 N. W. 881; *State* v. *Turner* (1910), 82 Kans. 787, 32 L. R. A. (N. S.) 772, 136 Am. St. 129, 109 Pac. 664; *People* v. *Marxhausen* (1919), 204 Mich. 559, 3 A. L. R. 1505, 171 N. W. 557; *People* v. *Miller* (1922), 217 Mich. 635, 187 N. W. 366; *Commonwealth* v. *Dana* (1841), 2 Metc. (Mass.) 329; *State* v. *Fuller* (1906), 34 Mont. 12, 85 Pac. 369; *State* v. *Pope* (1922), 210 Mo. App. 558, 243 S. W. 253; *State* v. *Owens* (1924), 302 Mo. 348; *State* v. *Gotta* (1924), 71 Mont. 288, 229 Pac. 405; *State* v. *Tuck* (1923), 46 Nev. 328, 212 Pac. 1037; *State* v. *Flynn* (1858), 36 N. H. 64; *People* v. *Adams* (1903), 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. 675; *Ciano* v. *State* (1922), 105 Ohio St. 229, 137 N. E. 11; *State* v. *Goldstein* (1924), 111 Ore. 221, 224 Pac. 1087; *State* v. *Atkinson* (1893), 40 S. C. 363, 18 S. E. 1021; *State* v. *Dersiy* (1922), 121 Wash. 455, 209 Pac. 837; *State* v. *Hennessy* (1921), 114 Wash. 351, 195 Pac. 211; *State* v. *Edwards* (1902), 51 W. Va. 220, 41 S. E. 429, 59 L. R. A. 465; *State* v. *Peterson* (1920), 27 Wyo. 185, 13 A. L. R. 1284, 194 Pac. 342; *Rippey* v. *State* (1920), 86 Texas Crim. 539, 219 S. W. 463; *Argetakis* v. *State* (1923), 24 Ariz. 599, 212 Pac. 372; *Imboden* v. *People* (1907), 40 Colo. 142, 90 Pac. 608; *Lawrence* v.

*State* (1906), 103 Md. 17, 63 Atl. 96; *Billings* v. *State* (1923), 109 Nebr. 596, 191 N. W. 721; *State* v. *Simmons* (1922), 183 N. C. 684, 110 S. E. 191; *Gore* v. *State* (1923), 24 Okla. Crim. 394, 218 Pac. 545; *Shields* v. *State* (1893), 104 Ala. 35, 16 So. 85, 53 Am. St. 17; *State* v. *Lock* (1924), 302 Mo. 400, 259 S. W. 116; *Commonwealth* v. *Hunsinger* (1926), 89 Pa. Super. Ct. 238; *Robertson* v. *State* (1927), 94 Fla. 770, 114 So. 534; *State* v. *Warfield* (1924), 184 Wis. 56, 198 N. W. 854.

There are cases to the contrary, but they are so few in number as to be of no practical importance. Kentucky alone holding the competency of evidence learned by a search warrant can be challenged only when offered at the trial. *Commonwealth* v. *Meiner* (1922), 196 Ky. 840, 245 S. W. 890; *Commonwealth* v. *Flynn* (1922), 196 Ky. 690, 245 S. W. 503.

The question as to what is a timely petition for a return of property taken under a search warrant, or to suppress evidence, and the effect of an untimely application has never been presented to the Supreme Court of this state. We have no doubt, however, but that when the question is properly presented, that court will be found to be in harmony with the Supreme Court of the United States, as are the majority of the supreme courts of other states, where the question has been presented, in holding that such applications must be timely made, and that, if the application is not timely made, the right will be lost.

Appellants were present when the search was made, and knew the keg of whisky had been seized. While the street number of appellants' place of business was incorrectly stated in the last search warrant, there is nothing in the record to show that appellants were not fully advised of that fact long prior to the trial, and no reason is given for not filing a motion before trial to suppress the evidence ascertained by that search. We hold the question as to the legality of the search was

not timely made and that the court did not err in the admission of the evidence of which complaint is made.

Appellants next contend the court erred in overruling their motion in arrest of judgment. This motion challenged the sufficiency of the indictment as a whole. Under this assignment, appellants challenge the constitutionality of §4, Acts 1925 p. 144, making the possession of intoxicating liquor a crime. Appellants do not even suggest that all of the counts in the indictment are defective in any respect. Some of the counts are unquestionably good, and it is settled law that one good count is sufficient to withstand a general motion to quash an indictment as a whole. *Barker* v. *State* (1925), 195 Ind. 647, 146 N. E. 745. The evidence is sufficient to sustain the verdict for maintaining a nuisance. The question as to the constitutionality of §4, in so far as it relates to possessing intoxicating liquor need not be decided. But, on that question, see *Guetling* v. *State* (1926), 198 Ind. 284, 152 N. E. 166; *Csallo* v. *State* (1927), 198 Ind. 693, 154 N. E. 671; *Ver Wilst* v. *State* (1928), 200 Ind. 30, 161 N. E. 249.

Affirmed.